ATTORNEYS FOR APPELLANT
David L. Taylor
Thomas R. Haley III
Joseph A. Samreta
Jennings Taylor Wheeler & Haley, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE
James O. McDonald
Everett, Everett & McDonald
Terre Haute, Indiana

AMICUS CURIAE
Indiana Trial Lawyers Association
Adrian P. Smith
Smith & DeBonis, LLC
Highland, Indiana

In the

# Indiana Supreme Court

No. 83S01-0501-CV-00007

AUTO-OWNERS INSURANCE COMPANY, *Appellant (Defendant below),*

v.

JON HARVEY AND MISTY JOHNSON, AS CO-PERSONAL REPRESENTATIVES OF
      THE ESTATE OF BRANDY NICOLE HARVEY, *Appellees (Plaintiffs below),*
                            AND
TOBY MICHAEL GEARHEART. *(Co-Defendant below)[1]*

Interlocutory Appeal from the Vermillion Circuit Court, No. 83C01-0210-CT-43
The Honorable Bruce V. Stengel, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 83A01-0309-CV-343

**February 22, 2006**

**Dickson, Justice.**

This interlocutory appeal challenges the denial of summary judgment in an insurance policy coverage dispute. Finding that the insured's statements and his plea of guilty to involuntary manslaughter conclusively established his alleged tortious act was committed "knowingly or in-

---

[1] This defendant, Toby Michael Gearheart, is not seeking relief on appeal and has not filed a brief as appellant or appellee. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

tentionally," the Court of Appeals held that coverage for the claim was excluded by the policy's definition and requirement of an "occurrence," and it remanded for the entry of summary judgment in favor of the insurer. Auto-Owners Ins. Co. v. Harvey, 813 N.E.2d 1190, 1193-95 (Ind. Ct. App. 2004). We granted transfer and now affirm the trial court.

The case arises from an incident in which Brandy Nicole Harvey, age 16, fell into the Wabash River and drowned. For purposes of this summary judgment proceeding, the parties agree that Toby Michael Gearheart, the co-defendant, states that the incident occurred just after he, age 19, and Brandy one evening visited a Wabash River boat ramp, where they partially disrobed and engaged in sexual intercourse. After five to ten minutes, Brandy told Gearheart to stop, which he did, and both stood up. When Gearheart twice asked Brandy, "What's wrong?," she did not answer but came toward him and repeatedly pushed him toward the water. When she came toward him a third time, he put his hands on her shoulders and pushed her. Brandy lost her balance and fell off of the edge of the boat ramp, down a rocky embankment, and into the river. There is also no dispute that, as a result of the incident, Gearheart entered a plea of guilty to involuntary manslaughter. But the parties disagree regarding the voluntariness of Brandy's presence and activities on the ramp, Gearheart's conduct and intent at the time of the push, and the significance of his intent upon the personal liability insurance coverage provided for Gearheart under a homeowner's policy issued by defendant-appellant Auto-Owners Insurance Company to Gearheart's parents, in whose home Gearheart was residing.

Brandy's surviving parents, Jon Harvey and Misty Johnson, as co-personal representatives of her estate, filed a wrongful death action against Gearheart, alleging that his "negligence and recklessness" had caused Brandy's death. Appellees' App'x. at 1. Three months later, Brandy's parents filed in the same court the present action, denominated as a "Complaint for Damages and Declaratory Judgment," naming as defendants both Gearheart and Auto-Owners. Appellant's App'x. at 8. In part, this second action sought a declaration that Auto-Owners was obligated to pay any judgment entered against Gearheart in the two cases. By agreement, the trial court consolidated these causes "[f]or purposes of discovery," and took under advisement the consolidation of the two actions for trial purposes. Id. at 756. Discovery ensued, and Auto-Owners filed a motion for summary judgment asserting "there is no liability coverage under its

2

policy for Toby Gearheart's conduct because his acts were intentional and his intent to harm [Brandy] Harvey should be implied as a matter of law." *Id*. at 100. The trial court denied the motion, finding without elaboration that "there is a material question of fact such that . . . Auto-Owners Insurance Company is not entitled to judgment as a matter of law." *Id.* at 7. At the request of Auto-Owners, the trial court then certified its denial of summary judgment for interlocutory appeal, and the Court of Appeals accepted jurisdiction.

In its appeal, Auto-Owners contends that it was entitled to summary judgment on two separate grounds, which it contends establish as a matter of law that there is no coverage under its policy: (1) Gearheart's conduct does not constitute an "occurrence" as required by the policy's insuring agreement; and (2) Gearheart's conduct falls under the "intended or expected harm" exclusion in the policy. Appellant's Reply Br. at 1-2.

In the appellate review of a denial of summary judgment, we apply the same standard as the trial court. Reeder v. Harper, 788 N.E.2d 1236, 1240 (Ind. 2003). Summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). During our review, all facts and reasonable inferences drawn from them are construed in favor of the non-moving party. Reeder, 788 N.E.2d at 1240.

### Requirement for Occurrence

Auto-Owners first contends that the insurance policy it issued requires an "occurrence" for liability coverage to be available, that the policy defines "occurrence" as "an accident," that Indiana law defines "accident" as something unintentional, and that the drowning death of Brandy Harvey in the Wabash River was the result of intentional conduct by Gearheart. Auto-Owners thus argues that the policy provides no liability coverage for Gearheart's conduct.

The relevant portion of the insuring agreement in the Auto-Owners insurance policy provides as follows: "We will pay all sums any Insured becomes legally obligated to pay as damages because of or arising out of bodily injury or property damage caused by an *occurrence* to

3

which this coverage applies."  Appellant's App'x. at 146 (emphasis added).  The insurance policy also states that "[t]o understand this policy, you must understand the meaning of the following words," and then defines "occurrence" to mean "an accident that results in bodily injury or property damage and includes, as one occurrence, all continuous or repeated exposure to substantially the same generally harmful conditions."  *Id.* at 129, 130.  The word "accident" is not defined in the policy.

To support its contention that Brandy's death did not result from an "occurrence" as defined in the policy, Auto-Owners first argues that it was not an "accident" because Gearheart, though insisting that he did not intend to harm Brandy, admitted that he intended to push her.  Auto-Owners asserts that because Gearheart's conduct was intentional, the incident was not an accident.  It urges that Gearheart's testimony regarding whether he intended harm to result from his intentional act of pushing "is not relevant as to whether there was an 'occurrence.'"  Br. of Appellant at 10.  Rather, Auto-Owners urges that Brandy's death was the natural and probable result of Gearheart's voluntary and intentional act of pushing, and thus her death should not be considered an "accident" for insurance purposes.

Certain disparity in bargaining power, which is characteristic of the parties to insurance contracts, has led courts to develop distinct rules of construction for those contracts.  Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528 (Ind. 2002).  If a contract is clear and unambiguous, its language is given its plain meaning.  *Id*.  But if there is ambiguity, the contract is construed strictly against the insurer, and the language of the policy is viewed from the insured's perspective.  Bosecker v. Westfield Ins. Co., 724 N.E.2d 241, 244 (Ind. 2000).  "An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning."  *Id*.

Indiana case law has held that, "in the context of insurance coverage, an accident means an unexpected happening without an intention or design."  Terre Haute First Nat. v. Specific Employers Ins. Co., 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993), *trans. not sought*; Nat. Mut. Ins. Co. v. Eward, 517 N.E.2d 95, 100 (Ind. Ct. App. 1987), *trans. not sought*.  This description is consistent with the plain meaning of "accident," as indicated by the primary definition pro-

4

vided in several modern dictionaries: "1. an unintentional or unexpected happening that is unde-sirable or unfortunate, esp. one resulting in injury, damage, harm, or loss," THE RANDOM HOUSE COLLEGE DICTIONARY 9 (1984); "1. a: an unforeseen and unplanned event or circumstance b: lack of intention or necessity," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 49 (1987); "1. An unexpected and undesirable event. 2. Something that occurs unexpectedly or unintention-ally," THE AMERICAN HERITAGE DICTIONARY 71 (2d ed. 1985). We agree with Auto-Owners that implicit in the meaning of "accident" is the lack of intentionality.

Indiana courts have often been confronted with claims disputing the application of "oc-currence" or "accident" language in liability insurance policies. The closest parallel to the pre-sent case is Eward, which addressed an insurer's claim of no liability coverage for claims against its insured who allegedly drove a vehicle while intoxicated, striking a pedestrian. The insuring agreement there provided liability coverage for bodily injury claims "caused by an accident" and expressly defined "accident" to require "bodily injury or property damage the insured neither ex-pected nor intended." Eward, 517 N.E.2d at 100. Focusing on the plain meaning of "accident," the court emphasized:

> In fact, in practically every incident out of which liability arises under such a policy there is a violation of some traffic law or regulation. It is obvious that protection against liabil-ity for negligence is the primary reason for holding such a policy. Is it reasonable then to say that one who is driving while intoxicated is so negligent that (1) his manner of driv-ing may be said to be willful and wanton, (2) no accident occurred, and (3) the injured party's injury was not suffered accidentally? We think not.
>      The contract at hand insures against loss as a result of an accident. There is no limitation as to how the accident may occur.

Id. at 101 (citations omitted).

In contrast, several decisions have involved whether "occurrence" applies to circum-stances remote from instances of specific personal physical conduct, but rather arising from claims based on commercial or professional conduct. See, e.g., Transamerica Ins. Serv. v. Kop-ko, 570 N.E.2d 1283, 1284-85 (Ind. 1991) (holding that a liability policy's "occurrence" require-ment, which was defined to require an "accident," did not cover a claim against an insured home builder by the home purchaser claiming the house settled due to the instability of the sub-soil); Erie Ins. Co. v. Am. Painting Co., 678 N.E.2d 844, 845-46 (Ind. Ct. App. 1997) (finding a claim

of negligent hiring and retaining of a painter who allegedly burglarized a home did not arise from an accident, and thus was not an occurrence covered under the liability insurance contract), *trans. not sought*; R.N. Thompson & Assoc. v. Monroe Guar. Ins. Co., 686 N.E.2d 160, 164-65 (Ind. Ct. App. 1997) (finding economic losses arising from inadequate materials and substandard construction work were not an accident or occurrence), *trans. denied*; Terre Haute First Nat'l , 634 N.E.2d at 1338 (finding a claim for Bank's negligence and breach of fiduciary duty in acting as plaintiff's guardian was not covered as an accident or occurrence under a liability insurance policy); City of Muncie v. United Nat'l Ins. Co., 564 N.E.2d 979, 982 (Ind. Ct. App. 1991) (affirming summary judgment for a liability insurer where insured asserted that an action for wrongful discharge of employees was covered as "occurrence" defined as conduct of insured that results in harm "neither expected nor intended"), *trans. not sought*.

In the present case, the policy states that Auto-Owners will pay for its insured's legal liability for "damages because of or arising out of bodily injury or property damage caused by an occurrence." Appellant's App'x. at 146. Under the facts of this case, however, the meaning and application of this provision is unclear. The language used by Auto-Owners can reasonably be understood in two different ways, depending on whether "occurrence" means Gearheart's push or Brandy's drowning. The policy language does not require that the "occurrence" or "accident" be limited to the actions of the insured. The claimed damages clearly arise out of Brandy's death, and the coverage ambiguity thus is whether the death should be considered to have been caused by the event of Gearheart's pushing or by the event of Brandy's drowning. If the required "accident" refers to Gearheart's push, then it is undisputed that it did not occur unexpectedly or unintentionally. If it applies to Brandy's slip, fall, and drowning, however, it is not clear that the drowning was clearly unexpected and unintentional. It was obviously unexpected and unintentional from Brandy's perspective, and possibly so from Gearheart's point of view. We thus find the policy language ambiguous and must construe it against Auto-Owners, holding that the term "occurrence" applies to Brandy's slip, fall, and drowning, and not to Gearheart's push.

The issue is whether Brandy's death by drowning was an accident, that is, whether it was "an unexpected happening without an intention or design." Terre Haute First Nat'l, 634 N.E.2d at 1338; Eward, 517 N.E.2d at 100. Auto-Owners seeks narrow application of the "occurrence"

6

clause by contending only that Gearheart intended to push Brandy, not that Gearheart specifically intended to push her into the river to drown. We decline to hold that Brandy's drowning death, even though resulting from Gearheart's conscious and intentional act of pushing her, necessarily falls outside the concept of "accident" upon which "occurrence" is defined in the Auto-Owners insuring agreement.

Auto-Owners cites federal cases as reaching a contrary conclusion. Red Ball Leasing v. Hartford Accident & Indem. Co., 915 F.2d 306, 312 (7th Cir. 1990) (holding that the intentional repossession of trucks was not an "accident" or "occurrence" and not covered"); Allstate Ins. Co. v. Davis, 6 F.Supp.2d 992, 994-95 (S.D.Ind. 1998) (finding no "occurrence" coverage for the death of child resulting from the insured intentionally bouncing the child on her knee); Allstate Ins. Co. v. Norris, 795 F.Supp. 272, 275 (S.D.Ind. 1992) (finding no "occurrence" coverage for the deliberate firing of a rifle at one person and hitting another).

We value the insight gained from federal court opinions interpreting Indiana law, but such decisions are not *stare decisis* and do not absolve us from our ultimate responsibility for determining state law. Chaffin v. Nicosia, 261 Ind. 698, 703, 310 N.E.2d 867, 870 (1974). The court in Red Ball Leasing, citing largely cases from jurisdictions other than Indiana, concludes that a volitional act "does not become an accident simply because the insured's negligence prompted the act." 915 F.2d at 311. The opinion continues:

> Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.

*Id.* (citations omitted). This approach governed Davis and Norris, two subsequent decisions of the United States District Court for the Southern District of Indiana. The court in Norris describes the Red Ball Leasing analysis as drawing

> a clear distinction between an event that is unexpected or unintended (which is an accident), and an event or act that is intended, but causes unexpected consequences (which is not). Under this distinction, a volitional act—which is always intended—does not constitute an accident, even where the results may be unexpected or unforeseen.

7

Norris, 795 F.Supp. at 275. [2]

We find these distinctions, however, to be rather unclear, potentially confusing, and likely to result in subjective and unpredictable judicial applications. Determining the availability of coverage based on whether negligence is "attenuated from the volitional act" is an unsatisfactory standard. Application of such a tool for construction of an "occurrence" or "accident" runs counter to our well-established principle that where insurance policies are ambiguous, they are to be "construed strictly against the insurer" and the policy viewed from the insured's standpoint. Beam, 765 N.E.2d at 528; Bosecker, 724 N.E.2d at 244; Am. States Ins. Co. v. Kiger, 662 N.E.2d 945, 947 (Ind. 1996). "Any doubts as to the coverage under the policy will be construed against the insurer in order to further the policy's basic purpose of indemnity." PSI Energy, Inc. v. Home Ins. Co., 801 N.E.2d 705, 723 (Ind. Ct. App. 2004), *trans. denied* (quoting Am. Family Life Assurance Co. v. Russell, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998)). For these reasons, we believe that the cited line of federal cases does not accurately state Indiana law.

Auto-Owners further contends that Brandy's death did not result from an "accident" (and thus was not an "occurrence" covered by the policy) because of Gearheart's plea of guilty to involuntary manslaughter, which it asserts conclusively establishes that Gearheart battered Brandy by pushing her, resulting in her death. It argues that "[i]ntentional conduct is not accidental and thus not an occurrence for purposes of insurance coverage," Br. of Appellant at 8, and that the intentionality of Gearheart's conduct was conclusively established in the criminal proceedings and may not be relitigated in this case. Auto-Owners urges that by this guilty plea, Gearheart admitted that pushing Brandy posed a serious risk of injury and that he intended to batter her.

---

[2] After noting federal decisions in Red Ball Leasing, Norris, and GATX Leasing Corp. v. Nat'l Union Fire Ins. Co, 64 F.3d 1112, 1117 (7th Cir. 1995) (applying Texas law to find negligent supervision resulting in theft was not a covered "occurrence"), the Davis court explains:

> The distinguishing factor between the facts in the instant case and this hypothetical [a driver negligently changing lanes] is that the intentional act of changing lanes was not the direct cause of the injury. Rather, it was the unintentional act of crashing into the other car that directly caused the injury. If the driver had intentionally crashed his car into the other car, then it would not be an accident.

Davis, 6 F.Supp.2d at 995 n.4. If we were to apply the same analysis to the present case, the facts here presented on summary judgment would permit us to analogously conclude that Gearheart's act of pushing Brandy was not the "direct cause of the injury," but rather it was the "unintentional act" of her falling into the river that caused her death.

8

Appellant's Reply Br. at 13.

The appendices submitted by the parties contain the plea agreement and the judgment of conviction, but not the charging information, the contents of which are not reflected in the plea agreement or judgment. These documents show that Gearheart pleaded guilty to, and was convicted of and sentenced for, involuntary manslaughter, a class C felony, in a particular cause number, but without naming the victim or describing any details regarding the charged conduct. The plea agreement also reflects that Gearheart acknowledged "that entry of a guilty plea pursuant to this Agreement constitutes an admission of the truth of all facts alleged in the charge." Appellant's App'x. at 159.

In its Appellant's Brief, Auto-Owners asserts that Gearheart pleaded guilty to the charge that he "did kill another human being, to wit: Brandy Nicole Harvey, while committing or attempting to commit battery." Br. of Appellant at 15 (citing Appellant's App'x. p. 159-61). But the quoted language does not appear in the plea agreement as Auto-Owners has cited, and we do not find it elsewhere in the record. The plaintiffs, however, do not dispute that Gearheart's involuntary manslaughter conviction arose from the incident resulting in Brandy's death, but they confirm that the acceptance of Gearheart's guilty plea constituted a judicial determination "that [Gearheart] committed a 'knowing' touching of Brandy in a rude, insolent or angry manner, resulting in her death, and that there was a factual basis for the plea." Br. of Appellees at 40. They argue, however, that Gearheart's plea judicially admitted only the unlawful touching, but nothing concerning his "motive, mental operations, intentions or purpose in pushing Brandy." *Id.*

The crime of battery, which is the knowing or intentional touching of another person in a rude, insolent, or angry manner, Ind. Code § 35-42-2-1, is among the crimes that, if resulting in death, can constitute the crime of involuntary manslaughter. McEwen v. State, 695 N.E.2d 79, 86 (Ind. 1998); *see also* Ind. Code § 35-42-1-4(c). Involuntary manslaughter is distinguished from the crime of murder by whether the defendant intended to batter or kill. McEwen, 695 N.E.2d at 86. The intent that must be shown to prove involuntary manslaughter is the intent required by the predicate offense, *id.*, which in this case was battery.

We are not persuaded by the claim of Auto-Owners that Gearheart's guilty plea conclusively establishes that there is no coverage under the "occurrence" clause. At most, the guilty plea shows only that Gearheart intended the battery (improper touching by pushing Brandy), and that her death resulted. But it does not establish that he intended Brandy's slip, fall, and drowning, and thus does not preclude the assertion that her death was accidental, and thus an "occurrence." And, as discussed above, the "occurrence" language of the Auto-Owners policy must be construed to refer not to Gearheart's push, but to Brandy's slip, fall, and drowning. The push was not accidental, but a genuine issue exists whether the drowning and resulting death were.

Auto-Owners additionally argues for a "fundamental requirement of fortuity in all insurance policies as a matter of law" as support for its interpretation of the "occurrence" requirement, Br. of Appellant at 13, relying on PSI Energy, 801 N.E.2d at 723 (Ind. Ct. App. 2004). PSI Energy held that insurers "are entitled to raise the 'intended or expected damage' defense regardless of whether the applicable language is expressly stated." *Id.* at 724. This argument by Auto-Owners is not persuasive for two reasons. First, there is no reason to imply such a condition here because the Auto-Owners policy already incorporates a similar concept in language chosen by Auto-Owners for one of its coverage exclusions, which we discuss in detail below. Second, PSI Energy does not hold or suggest that liability insurance necessarily excludes coverage for damages resulting from an insured's conscious, willful, or volitional conduct. Rather, it holds only that "even if there is no express policy language, 'there is an implied exception that denies liability insurance coverage for harm . . . intentionally inflicted by the insured.'" *Id.* at 724 (quoting Eric Holmes, 16 APPLEMAN INSURANCE 2d § 116.1 at 6 (2000)). There is a significant difference between whether injury results from an occurrence or accident, and whether it is intentionally inflicted by the insured. The fortuity element discussed in PSI Energy is thus neither relevant to our understanding of the Auto-Owners "occurrence" language nor does it supplant this provision of the Auto-Owners insuring agreement.

We conclude that the trial court did not err in denying the Auto-Owners motion for summary judgment as to its claim that the plaintiffs' claims fall outside the "occurrence" requirement of its liability insurance coverage.

10

**Exclusion for Injury Reasonably Expected or Intended**

In addition to claiming no coverage as a matter of law due to the requirement of an "oc-curance" in its insuring agreement, Auto-Owners also contends that there is no coverage because of a policy exclusion declaring that the personal liability coverage does not apply

> to bodily injury or property damage *reasonably expected or intended by the insured*. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.

Appellant's App'x. at 148 (emphasis added). In contrast to the insurance policy's insuring agree-ment that requires the *occurrence* to be accidental, this exclusion more narrowly considers whether the resulting *injury or damage* was intentional or reasonably expected by the insured.

Auto-Owners expressly identifies only the "intended" harm provision for its argument, and expressly disavows, for purposes of this summary judgment proceeding, any claim that Brandy's injuries were "expected" by Gearheart or that the "expected" harms portion of the pol-icy applies to exclude coverage. Br. of Appellant 23.

Auto-Owners argues that the exclusion for intended injury or damage applies because the nature and character of Gearheart's conduct was such that his intent to harm Brandy must be in-ferred as a matter of law, regardless of his subjective intent, and because of his guilty plea to in-voluntary manslaughter. It urges that from the physical circumstances of the boat ramp, Gear-heart's knowledge of Brandy's proximity to its edge, and the comparative size and strength of Gearheart and Brandy, his intent to harm her should be inferred as a matter of law, arguing that the chance she would be harmed was "not only reasonable, . . . it was a certainty." *Id*. at 27.

Auto-Owners does not assert that the presence or force of Gearheart's hands on Brandy's shoulders, standing alone, directly caused a "bodily injury" under the policy exclusion. Rather, it "contends that under the circumstances, the only reasonable conclusion or inference to be drawn . . . is that [Brandy] would fall into the Wabash River and be harmed if Gearheart pushed her." *Id*. at 26-27. We therefore need not consider whether the second sentence of the exclusion is applicable on a theory that the intentional push itself directly caused a "bodily injury" with the

11

ensuing death treated as a "bodily injury . . . of a different kind or degree . . . than that reasonably expected or intended." In fact, there is no indication in the record that the push itself caused Brandy any direct and immediate bodily injury.

We initially observe that, as discussed above, Gearheart's plea to involuntary manslaughter at most shows that he intended to push Brandy, but it does not establish that he intended or expected her to fall into the river and drown. His plea therefore is not conclusive upon whether Brandy's death was "reasonably expected or intended by the insured," as required for the coverage exclusion to apply.

The remaining issue therefore is whether summary judgment should be granted on the Auto-Owners claim that there is no genuine issue of fact regarding whether its insured, Gearheart, intended Brandy's fatal bodily injury, thus falling under its coverage exclusion. Auto-Owners urges that Gearheart's intent to harm Brandy should be inferred as a matter of law.

Basic summary judgment jurisprudence suggests to the contrary. Auto-Owners acknowledges that Gearheart insists that he did not intend to harm Brandy. *Id*. at 10, 26. Gearheart testified that when he pushed Brandy, he did not intend or expect for her to fall into the water or to be physically injured. Gearheart deposition at 108-112, Appellant's App'x. at 342-43. In ruling on a motion for summary judgment, not only all facts but also all "reasonable inferences drawn from those facts are construed in favor of the nonmoving party." Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). The court "must accept as true those facts alleged by the nonmoving party" and "resolve all doubts against the moving party." Shambaugh & Son, Inc., v. Carlisle, 763 N.E.2d 459, 461 (Ind. 2002). Application of these principles requires us to accept for summary judgment purposes Gearheart's statements and to reject the claim that Brandy's death was "intended . . . by the insured."

But Auto-Owners contends that, notwithstanding the evidence that Gearheart had no intent to harm Brandy, Indiana precedent supports an inference as a matter of law that Gearheart intended to harm Brandy so as to fall under the intended harm exclusion. We disagree and find that Indiana decisions lead to an approach consistent with basic summary judgment law.

12

The concept of inferring intent as a matter of law was presented in Home Ins. Co. v. Neilsen, 165 Ind.App. 445, 451, 332 N.E.2d 240, 244 (1975), *trans. denied*. This was an appeal from a trial court's declaratory judgment for the insured where the liability insurance policy contained an exclusion for injury "caused intentionally by or at the direction of the [i]nsured." *Id.* at 447, 332 N.E.2d at 242. The Court of Appeals identified as the key issue the meaning to be assigned the phrase "caused intentionally," in particular, whether this required the insured's conduct to be intentional, the specific resulting injury be intentional, or an intent merely to cause injury. *Id.* at 448, 332 N.E.2d at 242. Finding the policy language ambiguous and thus accepting a reasonable interpretation favorable to the insured, the court chose the third alternative, intent to cause injury, and stated that this "may be established either by showing an actual intent to injure, or by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law." *Id.* at 451, 332 N.E.2d at 244.

Home Ins. was subsequently interpreted in Heshelman v. Nationwide Mut. Fire Ins. Co., 412 N.E.2d 301 (Ind. Ct. App. 1980), *trans. denied*, where the court affirmed a final judgment after trial favorable to an insurer's claim of no coverage based on the same exclusion for injury "caused intentionally by or at the direction of an insured." *Id*. at 302. The Court of Appeals noted that Home Ins. contained language that the intent to cause injury may be inferred as a matter of law. *Id*. But the Heshelman court instead predicated its holding upon the trial court's findings regarding the insured's actual intent shown by the evidence. It noted that the insured had struck the claimant with his fist and stated:

> We cannot find . . . an abandonment of the concept of intent in Home Insurance and find no indication that the trial court here did the same. Rather, the trial court made the conclusion of law, based on the finding of the intent to hit Fox in this circumstance, that the [i]nsured intended harm to Fox.

412 N.E.2d at 303. In contrast to the present case, which is an appeal from the denial of summary judgment and where the issue is whether there is any genuine issue of fact, Heshelman involved the review of a final judgment after trial. It also does not support the position of Auto-Owners because it did not infer intent as a matter of law.

At issue in Allstate Ins. Co. v. Herman, 551 N.E.2d 844 (Ind. 1990), was the denial of

summary judgment for an insurer claiming application of an exclusion. The opinion does not disclose the actual language of the exclusion but merely notes that it "excluded the intentional acts of the insured." *Id.* at 845. Justice Givan's succinct opinion for the majority focuses upon facts presented in the record, emphasizing:

> There can be no doubt from the evidence in this case that [the insured] deliberately fired four shots into a crowd of fleeing people of which Herman was a member. Although there is no evidence he intended to specifically shoot Herman, he certainly had the intention of shooting into the fleeing crowd with the intent "to hurt somebody."

*Id.* The opinion noted the holding in <u>Home Ins.</u> that the word "intentional" did not necessarily require intending the precise resulting injury, but it did not expressly address whether intent under the exclusionary clause at issue could be inferred as a matter of law. Such an inference, however, is apparent in its concluding language:

> We hold that, as a matter of law, when [the insured] intentionally fired a gun into the fleeing crowd, of which Herman was a part, he was deliberately committing an act which any reasonable person would deem calculated to cause injury. Allstate's exclusionary clause as to intentional acts by the insured entitled them to a summary judgment as a matter of law.

*Id.* at 846. The majority in <u>Herman</u> does not discuss whether there was conflicting evidence before the court on summary judgment regarding the insured's intent to injure, nor does it provide any criteria for inferring intent as a matter of law where there is contrary evidence that an insured had no intent to harm. From Justice DeBruler's dissenting opinion, we know that the insured stated both that he "intended to hurt someone" and that "I don't know what I intended." *Id.* at 846. We believe that <u>Herman</u> is best understood to reflect that, under the specific facts and circumstances there presented, the majority was strongly convinced that there was "no genuine issue as to any material facts" and that Allstate was "entitled to a judgment as a matter of law." T.R. 56(C).

The decisions in <u>Herman</u> and numerous opinions from the Court of Appeals were recently reviewed in <u>PSI Energy</u>, which involved a declaratory judgment concerning various insurers' obligations to indemnify PSI, the policyholder, for environmental clean up costs under insurance policies purchased over a thirty-five-year period. Finding that the insurers were entitled to raise an "intended or expected damage" defense regardless of the omission of the applicable language from the express policy provisions, the Court of Appeals addressed whether such an im-

plied exclusion barred coverage "only upon a showing of the policyholder's actual subjective expectation or intent to injure." PSI Energy, 801 N.E.2d at 727. In the course of surveying various decisions, the court noted that "intent to injure can be inferred in certain situations where actual intent cannot be shown, if the nature and character of the act are such that intent to cause harm must be inferred as a matter of law." *Id.* at 729 (quoting Coy v. Nat'l Ins. Ass'n, 713 N.E.2d 355, 360 (Ind. Ct. App. 1999)). Such inference "applies only where reason *mandates* that from the very nature of the act, harm to the injured party *must* have been intended." *Id.* (emphasis added). Likewise, "even if the evidence demonstrates a disregard for safety," such evidence is insufficient to warrant exclusion for expected or intended injuries. *Id.* at 728. The court in PSI Energy concluded that "[i]n this case, there is simply not sufficient evidence to support an inference of PSI's intent as a matter of law." *Id.* at 729.

The analysis in PSI Energy accurately reflects the applicable law on this issue. Thus it is possible that, in determining a motion for summary judgment, a court may find no genuine issue of material fact as to whether designated evidence calls for the application of an exclusion for injuries "intended by an insured." But to do so, the party moving for summary judgment must convince the court that the evidence is so overwhelming as to mandate the court to conclude that, from the very nature of an insured's actions, harm must have been intended. The "no genuine issue of fact" requirement for summary judgment may be satisfied by such certainty in the level of proof.

In the summary judgment proceedings in the present case, the designated evidence includes Gearheart's statements expressly denying any intent or expectation to cause bodily injury to Brandy and explaining the circumstances of his push of Brandy. To overcome these, Auto-Owners emphasizes evidence regarding the physical dimensions of the boat ramp, Gearheart's knowledge of Brandy's proximity to its edge, Gearheart's awareness of his own size and strength as compared to Brandy, and that Gearheart's push of Brandy caused her to slip and fall into the river. This evidence is definitely not so overwhelming as to mandate us to conclude that Gearheart must have intended to harm Brandy. Because Auto-Owners has failed to demonstrate the absence of a genuine issue of material fact regarding Gearheart's intent to harm Brandy, the trial court was correct to deny summary judgment on the Auto-Owners claimed application of the

15

coverage exclusion.

## Conclusion

We affirm the trial court's decision to deny the Auto-Owners motion for summary judgment.  This cause is remanded to the trial court for further proceedings.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.