## HOLIDAY HOSPITALITY FRANCHISING, INC.,
Appellant–Defendant,

v.

## AMCO INSURANCE COMPANY,
Appellee–Plaintiff.

Holiday Inn Express of New Castle, LLC, Anil Megha, S.H., Individually and as Parent and Next Friend of R.M.H., a minor child, and Michael V. Forshey, Interested Parties–Defendants.

No. 33A01–1103–CT–104.

Court of Appeals of Indiana.

Oct. 13, 2011.

Robert B. Clemens, Curtis T. Jones, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellant Holiday Hospitality Franchising, Inc.

Freedom Villa Miller, Smith Fisher Maas & Howard, P.C., Indianapolis, IN, Attorney for Interested Parties Holiday Inn Express of New Castle, LLC and Anil Megha.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Interested Party S.H. Individually and as Parent and Next Friend of R.M.H., A Minor Child.

Danford R. Due, Scott E. Andres, Due Doyle Fanning, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issue

Holiday Hospitality Franchising, Inc. ("Holiday Hospitality") appeals the trial court's grant of Amco Insurance Company's ("AMCO") motion for summary judgment. Holiday Hospitality raises two issues for our review, which we restate as whether an "occurrence" took place for the purposes of the insureds' insurance policy, and whether a hotel guest is "in the care, custody or control" of the hotel. Concluding the alleged negligent acts give rise to an "occurrence" under these circumstances and a genuine question of material fact remains regarding whether R.M.H. was in the hotel's "care, custody or control," we reverse and remand for further proceedings.

### Facts and Procedural History

In May of 2007, Michael Forshey, an employee of Holiday Inn Express of New Castle, LLC ("Holiday Inn"), molested R.M.H., a fifteen-year-old guest at the Holiday Inn. Holiday Inn, along with its parent company Holiday Hospitality, was insured by AMCO under the same policy.[1] The insurance policy provided for bodily injury and property damage liability coverage, personal and advertising liability coverage, and a duty to defend. The pertinent provisions of the policy are as follows:

## I. COVERAGES

---

1. The insurance policy is technically issued to Holiday Inn, but due to provisions in the policy, members of the limited liability company, employees acting within the scope of employment, and any franchisor or licensor subjected to liability due to its position as franchisor or licensor of Holiday Inn are all insured by the same policy. *See* Appendix to Brief of Appellant at 141–42.

## A. COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. INSURING AGREEMENT

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

\* \* \*

b. This insurance applies to "bodily injury" and "property damage" only if:

1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

\* \* \*

### 2. EXCLUSIONS

This insurance, including any duty we have to defend "suits", does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" which is expected or intended by the insured.

This exclusion applies even if the resulting "bodily injury" or "property damage":

1) Is of a different kind, quality or degree than initially expected or intended; or

2) Is sustained by a different person, entity, real property, or personal property than that initially expected or intended.

\* \* \*

r. Abuse or Molestation

"Bodily injury" or "property damage" arising out of:

1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody, or control of any insured, or

2) The negligent:

a) Employment;

b) Investigation;

c) Supervision;

d) Reporting to the proper authorities, or failure to so report; or

e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1) above.

\* \* \*

## B. COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. INSURING AGREEMENT

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

\* \* \*

### 2. EXCLUSIONS

This insurance, including any duty we have to defend "suits", does not apply to:

a. "Personal and advertising injury":

1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

* * *

12) Arising out of:

a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

b) The negligent:

i) Employment;

ii) Investigation;

iii) Supervision;

iv) Reporting to the proper authorities, or failure to so report; or

v) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph

a) above;

* * *

## IV. LIABILITY CONDITIONS

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

* * *

5. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

* * *

## V. DEFINITIONS

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

* * *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

Appendix to Brief of Appellant at 128–49.

In September of 2008, S.H., individually and as parent and next friend of R.M.H., filed a twelve-count complaint against the following: Forshey; an individual member of the Holiday Inn limited liability company; Holiday Inn; and Holiday Hospitality. Holiday Hospitality filed a motion for partial summary judgment on the issue of whether it could be held vicariously liable for the actions of Forshey. Concluding Forshey's misconduct occurred while he was outside the scope of his employment, the trial court granted the partial summary judgment as to all underlying defendants. The only remaining claims in the underlying litigation are for negligent hiring, retention, and/or supervising.

In 2009, AMCO filed this declaratory judgment action, seeking the trial court's determination that AMCO's policy with Holiday Inn does not provide coverage to

any of the defendants in the suit brought by S.H. AMCO then filed a motion for summary judgment, and, following a hearing, the trial court granted AMCO's summary judgment motion on March 21, 2011. Holiday Hospitality now appeals the trial court's grant of AMCO's motion for summary judgment.[2]

## Discussion and Decision

### I. Standard of Review

Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). On appeal, we are bound by the same standard as the trial court. *Hamilton v. Ashton,* 846 N.E.2d 309, 313 (Ind.Ct.App.2006), *clarified on reh'g on other grounds,* 850 N.E.2d 466, 467 (Ind.Ct.App.2006), *trans. denied.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We do not reweigh the evidence, but instead liberally construe the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id.* at 314. On appeal, the appellant bears the burden of demonstrating that the trial court erred, and if the trial court's ruling can be sustained on any basis or theory supported by the record, we must affirm. *Id.* However, "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no

motion for summary judgment is filed by such party." T.R. 56(B).

■ Insurance policies are contracts that are subject to the same rules of construction as other contracts. *Sheehan Constr. Co., Inc. v. Cont'l Cas. Co.,* 935 N.E.2d 160, 169 (Ind.2010), *opinion adhered to as modified on reh'g on other grounds,* 938 N.E.2d 685, 687 (Ind.2010). When the language of an insurance policy is clear and unambiguous, we give the language its plain and ordinary meaning. *Id.* If unambiguous, an insurance policy must be enforced according to its terms. *Id.* Insurers have the right to limit their coverage of risks by imposing exceptions, conditions, and exclusions. *Id.* But if there is ambiguity in the language of an insurance policy, we strictly construe it against the insurer. *Auto–Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1283 (Ind. 2006). An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.*

### II. Holiday Hospitality's Policy

#### A. The Policy's Application

■ Holiday Hospitality first argues the trial court mistakenly concluded the molestation was not an "occurrence" as that term is defined in the policy. Our analysis of whether bodily injury was caused by an "occurrence" begins with *Erie Ins. Co. v. American Painting Co.,* 678 N.E.2d 844 (Ind.Ct.App.1997), *trans. dismissed,* which the trial court relied upon in concluding "Indiana courts have held that there is no coverage for damage alleged to have arisen from negligent hiring and retention." App. to Brief of Appellant at 12. In

---

**2.** While the other underlying defendants all filed briefs as interested parties in this appeal, none are actually parties.

*American Painting Co.*, an employee of American allegedly burglarized the home of a customer and set it on fire. 678 N.E.2d at 845. The customer filed suit against the employee and American, claiming American was liable for damages because it was careless and negligent in hiring and retaining the employee. *Id.* Our decision turned on whether an "occurrence" took place, defined in the policy as an "accident, including continuous or repeated exposure to the same general, harmful conditions." *Id.* at 845–46. Noting prior cases in which we have defined accident as "an unexpected happening without an intention or design," we concluded "the property damage is alleged to have arisen from American's hiring and retention of [the employee]. These acts by American, even if proven to be careless and negligent, were intentional, not accidental." *Id.* at 846. In so holding, we relied upon Seventh Circuit case law, citing *Red Ball Leasing, Inc. v. Hartford Accident & Indemnity Co.*, 915 F.2d 306, 311–12 (7th Cir.1990) (application of Indiana law) for its holding "that the insurer had no duty to defend because the intentional and negligent acts of the insured were not 'accidents' under the insurance contract." *Id.*

In *Harvey*, however, our supreme court expressly stated that *Red Ball Leasing* and other Seventh Circuit cases do not accurately state Indiana law regarding whether a party's negligence is intentional or accidental. 842 N.E.2d at 1285–86. AMCO is correct that our supreme court cited to *American Painting Co.* as recently as 2009, but rather than doing so for the rule that negligent acts are intentional and not accidental, it cited to *American Painting Co.* as an example of the notion that commercial general liability policies typically exclude claims arising out of professional or other business services. *Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909

N.E.2d 997, 1002 (Ind.2009). Thus, we decline to follow the conclusion of *American Painting Co.* in determining whether the trial court erred.

Holiday Hospitality contends an occurrence did take place. First, it asserts the separation of insureds provision requires a determination of whether coverage was triggered for Holiday Hospitality separately from the same determination for Forshey. Second, Holiday Hospitality argues that ambiguities exist in AMCO's policy as applied to the facts of this case, and, given Indiana's construction of ambiguous insurance policies against insurance companies, we should construe Holiday Hospitality's policy against AMCO. Third, Holiday Hospitality argues that AMCO did not present evidence demonstrating that the alleged negligent conduct of Holiday Hospitality was not accidental, and we should therefore conclude an occurrence took place pursuant to *Wayne Twp. Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1209 (Ind.Ct.App.1995). We agree that an occurrence did take place.

In *Wayne Twp. Bd. of Sch. Comm'rs,* the principal of an elementary school sexually molested a minor in his office. 650 N.E.2d at 1207. In addition to filing suit against the principal, the child brought suit against the Wayne Township Board of School Commissioners, alleging negligence. *Id.* In determining if the child's injuries were caused by an occurrence as defined in the insurance policy, we concluded that due to a separation of insureds provision in the policy, the actions of the Board of School Commissioners may have been accidental even though the principal's actions were intentional, thereby leaving the Board of School Commissioners' insurance coverage potentially applicable. *Id.* at 1208–09. Because the insurance company presented no evidence other than the intentionality of the principal's conduct to

refute that an occurrence gave rise to the injuries, we reversed the trial court's grant of the insurance company's motion for summary judgment. *Id.* at 1209.

Here, as in *Wayne Twp. Bd. of Sch. Comm'rs,* AMCO's insurance policy contained a separation of insureds provision. AMCO argues, however, that pursuant to *American Painting Co.,* the actions of hiring and retaining Forshey were intentional even if they were performed negligently. As discussed above, our supreme court has rejected the line of federal cases on which *American Painting Co.* bases its conclusion, and we again decline to follow *American Painting Co.*

Other than *American Painting Co.,* our state appellate courts have not specifically addressed whether an employer's negligent hiring or supervision of an employee could be accidental. *Harvey* is helpful in our analysis, though not determinative. There, the insured defendant pushed his girlfriend while they were near a river. She then lost her balance, fell down the embankment into the river, and drowned. 842 N.E.2d at 1281. The insured pleaded guilty to involuntary manslaughter, which necessitates the finding that he intended the predicate offense of battery. *Id.* at 1287. In determining whether an "occurrence" took place, our supreme court concluded that although the push may not have been accidental, a genuine issue of material fact existed as to whether the drowning and resulting death were accidental. *Id.* The important logic of *Harvey* for the present case is that when there are different events which could reasonably be used in conducting the "occurrence" analysis based upon the language of the insurance policy, and a genuine issue of material fact exists regarding any of the events which could have given rise to an occur-

rence, it is inappropriate to determine at the summary judgment stage that no occurrence took place. *See id.*

Applying Indiana law, the court in *American Family Mut. Ins. Co. v. Bower,* 752 F.Supp.2d 957 (N.D.Ind.2010) used similar logic. In *Bower,* Michael and Anne Bower's son, Jonathan Bower, molested a minor, and an action was filed that included claims of negligent supervision against the Bowers. *Id.* at 960. The Bowers had a homeowner's insurance policy with American Family Mutual Insurance Company ("American Family") that covered damages for any claim arising out of an "occurrence," defined in the policy as an "accident." *Id.* at 962. In support of its motion for summary judgment, American Family argued no "occurrence" took place because the sexual molestation by Jonathan was not accidental and therefore the resulting injuries were not accidental, either. *Id.* The court disagreed, reasoning that ambiguity existed regarding the term "accident." The term was not further defined in the policy, and, although the molestation was intentional when viewed from the perspective of Jonathan, if viewed from the perspective of the Bowers there was no evidence demonstrating they intended or expected the resulting molestation.[3] *Id.* at 964.

■ The court concluded that, in light of Indiana's construction of ambiguous insurance policies against the insurance company, where a severability provision exists, no evidence is designated showing the defendants intended or expected Jonathan to molest the minor when they allegedly acted negligently, and the term "accident" is not further defined in the policy and "susceptible to differing reasonable interpretations," the alleged negligent conduct con-

---

3. *See Bower,* 752 F.Supp.2d at 962 (stating Indiana courts have defined "accident" as "an unexpected happening without an intention or design").

stitutes an "occurrence" for purposes of the insurance policy. *Id.* at 963–65. As our supreme court noted in *Harvey*, "[w]e value the insight gained from federal court opinions interpreting Indiana law, but such decisions are not *stare decisis* and do not absolve us from our ultimate responsibility for determining state law." 842 N.E.2d at 1285 (citation omitted). Although the defendants in *Bower* were parents, rather than an employer, the legal issue closely parallels our issue today and we adopt the district court's analysis.

The reasoning of *Bower* is precisely what is argued by Holiday Hospitality. First, that a separation of insureds provision allows the finding of an "occurrence" regarding Holiday Hospitality's action even if Forshey's actions do not amount to an accident. Second, without further specificity in the language of the policy, ambiguity exists depending on how we characterize the event that may or may not have been an accident, and ambiguities in insurance policies are strictly construed against the insurance company pursuant to Indiana law. Third, one such phrasing could reasonably be whether an employer's negligent hiring, supervision, and/or retention of an employee who later commits sexual misconduct is an accident.[4] Without evidence that the employer intended or expected the sexual misconduct to result, this cannot reasonably be deemed intentional, but rather, it is accidental. In light of our policy construing ambiguous insur-

ance policies against insurance companies, we conclude that in these circumstances an "occurrence" has taken place triggering AMCO's coverage of Holiday Hospitality.

AMCO also argues no occurrence took place because the predominating cause of any alleged negligence on behalf of Holiday Hospitality was Forshey's criminal act of molestation. This argument is more properly addressed in the second issue of contract interpretation presented for our review, which is whether the abuse and molestation exclusion in the parties' policy applies.[5] While Holiday Hospitality acknowledges the parties' policy contains an exclusion from coverage for injuries arising out of abuse or molestation and specifically from coverage for liability due to negligent employment, supervision, or retention of the perpetrator of such abuse or molestation, Holiday Hospitality argues the policy provisions require that the person injured by the perpetrator be "in the care, custody or control of any insured" and that R.M.H. was not "in the care, custody or control" of an insured. As we reason below, genuine questions of material fact remain on this point, rendering summary judgment inappropriate.

### B. The Exclusion's Application

■ The next issue is whether R.M.H. was "in the care, custody or control" of Holiday Inn, Holiday Hospitality, or any other insured. Holiday Hospitality argues the application of this provision gives rise

---

4. We recognize the act of hiring and, to some degree retaining, necessitates the intent to execute the act. This is unlike supervising, which does not necessitate any intentional actions in circumstances where there was an omission of supervision. However, given our construction of insurance policies against insurance companies, without evidence demonstrating intent to negligently hire or retain an employee we conclude such alleged negligence gives rise to an occurrence.

5. The predominating cause analysis precludes coverage where the predominating cause of the insured's potential liability is an act or event that is itself excluded by the insurance policy. *See Property–Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 983 (Ind.Ct. App.2006). To address AMCO's argument, we must therefore determine whether the event AMCO claims is the predominating cause of Holiday Hospitality's liability, Forshey's molestation, is excluded by the policy.

to genuine issues of material fact. In support of its motion for summary judgment, AMCO asserted R.M.H. was in the care of Holiday Inn because R.M.H. was a guest at the hotel, occupied a locked room, and was molested in one of the hotel rooms. App. to Brief of Appellant at 50. It cites various cases from other jurisdictions to support its position that being a guest at a hotel is being "in the care, custody, or control" of the hotel. First, AMCO cites *Sarah G. v. Maine Bonding & Cas. Co.*, 866 A.2d 835, 838–39 (Me.2005) in support of its position. *Sarah G.* is distinguishable because on appeal the parties did not raise the issue of "care, custody or control" but instead focused on whether an "abuse" occurred. Further, unlike here, where R.M.H. was staying at Holiday Inn with a friend and the friend's mother, in *Sarah G.* the minor children stayed at a motel without an adult accompanying them and upon being solicited by the motel owner and eventual molester.

Next, AMCO cites *Doe v. Lenarz*, 2007 WL 969610 at *2–3 (Conn.Super.Ct.2007), an unpublished opinion. In *Doe*, a minor taking karate classes was molested by an instructor. *Id.* at *1. This case is distinguishable because the children taking classes were under the supervision of the employees and instructors of the karate facility. *Id.* at 3. R.M.H. was not in such a program or anything similar while staying at Holiday Inn.

Third, AMCO cites *12th Street Gym, Inc. v. Philadelphia Indemnity Ins. Co.*, 2006 WL 1652690, *2–3 (Pa.Com.Pl.2006). There, a woman was sexually assaulted while receiving a personal massage in a private room. *Id.* at *1. This is distinguishable as well because when receiving a personal massage in a private room, one is physically in the care and control of the massage therapist. This is unlike a hotel, where, although guests are business invitees, guests receive their own personal rooms and are not accompanied by a hotel employee.

Last, AMCO refers us to *Community Action for Greater Middlesex Cnty., Inc. v. American Alliance Ins. Co.*, 254 Conn. 387, 757 A.2d 1074, 1082–83 (2000), noting that it "[cites] to numerous cases holding that the exact same abuse and molestation exclusion at issue in the AMCO Policy [sic] contains no ambiguity and properly excluded coverage." Appellee's Brief at 15 n. 8. Although the policy language was the same, the issue in that case and the cases it cites was not whether someone was "in the care, custody or control" of another, and thus they provide no guidance on that issue.

While AMCO may be correct that R.M.H. was a business invitee of Holiday Inn, and was therefore owed a duty of reasonable care, we conclude that this is not the same as being "in the care, custody or control" of Holiday Inn. *See Booher v. Sheeram, LLC*, 937 N.E.2d 392, 395 (Ind. Ct.App.2010) (stating hotel guests are business invitees and hotels owe a duty of reasonable care to guests to protect them from foreseeable dangers on the premises but not to insure a guest's safety), *trans. denied.* A duty of reasonable care relates to the actions of Holiday Inn and governs the responsibility given it to reasonably protect business invitees and to keep the business property in a reasonably safe condition. *Beta Steel v. Rust*, 830 N.E.2d 62, 70 (Ind.Ct.App.2005). Being in the care, custody, or control of someone, however, requires more than a mere business invitee status. In the context of a hotel, it would require something additional, such as a minor being supervised by hotel employees. Thus, AMCO has not demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

## Conclusion

An "occurrence" took place for the purposes of the insureds' insurance policy, and a genuine issue of material fact remains regarding whether R.M.H. was "in the care, custody or control" of Holiday Inn. We therefore reverse and remand for further proceedings consistent with this opinion.

BARNES, J., and BRADFORD, J., concur.