BRADFORD, Judge,
concurring in result.
Although I agree with the majority that there is coverage here, I reach my conclusion by another route. In my view, while the “personal injury” provisions of the Policies do not provide for coverage, the “property damage” provisions do. Consequently, I concur in result.
I. Personal Injury Provisions
I agree with the majority’s conclusion that the Policies’ definition of “personal injury” is ambiguous to the extent that it is unclear just what the phrase “by or on behalf of its owner, landlord, or lessor” is modifying. I do not believe, however, that this ambiguity leads to coverage in this case, because there is no evidence that IRI ever did anything on FLM’s behalf, much less any of the actions the phrase might be modifying. Even if we assume that the phrase is modifying “occupies,” there is no indication that the relationship between FLM and IRI ever went beyond that of lessor and lessee, and as the Indiana Supreme Court has noted, “no agency is implied between lessor and lessee.” Hopkins v. Hudson, 107 Ind. 191, 196, 8 N.E. 91, 93 (1886). The Indiana Supreme Court has made it clear that, while ambiguities will be strictly construed against the insurer, “for ambiguity to confer coverage, the covered item must be somewhere within the circle of ambiguity.” Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049, 1057 (Ind. 2001) (emphasis supplied). Here, the circle of ambiguity is not large enough to encompass IRI’s actions, because there is no evidence that IRI ever did anything on FLM’s behalf. I would therefore conclude that the personal injury provisions of the Policies do not provide for coverage.
II. Property Damage Provisions
Because the majority has concluded that the Policies’ personal injury provisions provide coverage, it does not reach the question of whether the property damage provisions do, as FLM has also argued. In my view, the property damage provisions at issue do provide for coverage. The key question to be answered is whether the contamination of FLM’s land caused by the foundry sand constituted an “occurrence” within the scope of the Policies, and I conclude that it did.
IRI’s GCL policy with Cincinnati defines “occurrence” as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” Appellant’s App. p. 153. The Umbrella Policy defines “occurrence,” in part, as “[a]n accident, including continuous or repeated exposure to substantially the *1178 same general harmful conditions, that results in ‘bodily injury’ or ‘property damage.’ ” Appellant’s App. p. 256. The parties’ arguments focus on the meaning of the term “accident,” which is defined in neither policy. The question is whether the term only covers IRI’s action of placing the foundry sand on FLM’s land or whether it also encompasses the unintended consequences of that action. Put another way, because IRI unquestionably intended to put the sand on FLM’s property, if the term “accident” does not also encompass unintended consequences of that non-accidental action, the property damage provisions would provide no coverage. Conversely, coverage would exist if the term “accident” encompassed unintended consequences of intentional actions.
I believe that the Indiana Supreme Court’s holding in Auto-Owners Insurance Co. v. Harvey, 842 N.E.2d 1279 (Ind.2006), controls here. In Harvey, the issue was whether a policy provided coverage for the harm caused by the insured, Toby Gearh-eart, who pushed his girlfriend Brandy Harvey into the Wabash River, where she drowned. Id. at 1281. As here, the relevant policy provided coverage for an “occurrence,” which that policy defined as “an accident that results in bodily injury or property damage and includes, as one occurrence, all conditions or all continuous or repeated exposure to substantially the same general harmful conditions.” Harvey, 842 N.E.2d at 1283. Also as here, the policy did not define “accident.” Id. While it was undisputed that Gearheart’s push was intentional, it was not clear whether he intended Brandy to die. Id. at 1284-85. The question, then, was whether the push was an “accident” under the policy, because, while it was unquestionably intentional, it possibly had unintended consequences.
The Haney Court first noted that “Indiana case law has held that, ‘in the context of insurance coverage, an accident means an unexpected happening without an intention or design.’ ” Id. at 1283 (citing Terre Haute First Nat. Bank v. Pac. Emp’rs Ins. Co., 634 N.E.2d 1336, 1338 (Ind.Ct.App.1993); Nat. Mut. Ins. Co. v. Eward, 517 N.E.2d 95, 100 (Ind.Ct.App.1987)). The Court then resolved the issue as follows:
In the present case, the policy states that Auto-Owners will pay for its insured’s legal liability for “damages because of or arising out of bodily injury or property damage caused by an occurrence.” Under the facts of this case, however, the meaning and application of this provision is unclear. The language used by Auto-Owners can reasonably be understood in two different ways, depending on whether “occurrence” means Gearheart’s push or Brandy’s drowning. The policy language does not require that the “occurrence” or “accident” be limited to the actions of the insured. The claimed damages clearly arise out of Brandy’s death, and the coverage ambiguity thus is whether the death should be considered to have been caused by the event of Gearheart’s pushing or by the event of Brandy’s drowning. If the required “accident” refers to Gearh-eart’s push, then it is undisputed that it did not occur unexpectedly or unintentionally. If it applies to Brandy’s slip, fall, and drowning, however, it is not clear that the drowning was clearly unexpected and unintentional. It was obviously unexpected and unintentional from Brandy’s perspective, and possibly so from Gearheart’s point of view. We thus find the policy language ambiguous and must construe it against Auto-Owners, holding that the term “occurrence” applies to Brandy’s slip, fall, and drowning, and not to Gearheart’s push.
Id. at 1284-85.
I believe that the Harvey Court’s analysis applies with equal force here, and *1179 would reach the same conclusion, ie., that “accident” refers not only to the volitional act of the insured but also any unintended consequences of that act. In this case, this interpretation leads to the conclusion that there is coverage pursuant to the property damage provisions of the Policies.[9] As in Harvey, the Policies do not require that the “accident” be an action of the insured, meaning that the policy here contains the same ambiguity as the policy in Harvey. In other words, “accident” could just as easily be referring to IRI’s actions as to the unintended consequences of those actions, and this ambiguity must be resolved in favor of coverage. Because I believe that coverage exists here pursuant to the property damage provisions of the Policies, I would remand with instructions to enter summary judgment in favor of FLM on that basis.

. I note one procedural distinction with Harvey: in that case, there existed a genuine issue of material fact regarding whether Gearheart intended Brandy’s death, so the Court remanded for trial on the issue. Here, there does not seem to be any designated evidence that IRI intended for the foundry sand to contaminate FLM’s property. Therefore, in my view there would be no need for trial on the issue of coverage, as there was in Harvey.