ATTORNEYS FOR APPELLANT
Barry C. Cope
Karl L. Mulvaney
Kandi Kilkelly Hidde
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

Jeffrey C. Gerish
Plunkett & Cooney, P.C.
Bloomfied Hills, Michigan

ATTORNEYS FOR AMICUS CURIAE
COMPLEX INSURANCE CLAIMS
LITIGATION ASSOCIATION
Michael A. Dorelli
Patrick J. Olmstead, Jr.
Hoover Hull LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INSURANCE INSTITUTE OF INDIANA
Jonathon Zarich
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Richard S. VanRheenen
VanRheenen & Associates, P.C.
Indianaapolis, Indiana

George M. Plews
Jeffrey D. Featherstun
Sean Michael Hirschten
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
ELI LILLY & COMPANY, VECTREN
CORPORATION, CITIZENS ENERGY GROUP,
INDIANA MANUFACTURERS ASSOCIATION,
AND INDIANA PETROLEUM MARKETERS AND
CONVENIENCE STORES ASSOCIATION, INC.
Frank J. Deveau
Thomas A. Barnard
David L. Guevara
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Mar 22 2012, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1104-PL-199

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

*Appellant (Plaintiff below),*

v.

FLEXDAR, INC. AND RTS REALTY,

*Appellees (Defendants below).*

Appeal from the Marion Superior Court No. F12
No. 49F12-0705-PL-018927
The Honorable Michael D. Keele, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-1002-PL-111

_____

**March 22, 2012**

**Rucker, Justice.**

In this case we examine whether the language of a pollution exclusion in a commercial general liability policy is ambiguous. We hold that it is.

**Facts and Procedural History**

Flexdar, Inc. ("Flexdar") manufactured rubber stamps and printing plates at its Indianapolis facility (the "Site") from late 1994 or early 1995 through 2003. Flexdar's manufacturing process used a chemical solvent called trichloroethylene ("TCE"). In late 2003 and early 2004, Flexdar discovered that TCE was present in the soil and groundwater both on and off the Site. The Indiana Department of Environmental Management ("IDEM") informed Flexdar that Flexdar would be liable for the costs of cleanup. Flexdar maintained commercial general liability and umbrella insurance policies with State Automobile Mutual Insurance Company ("State Auto") for the period October 1, 1997 through June 2, 2002, and requested defense and indemnification from State Auto.[1] State Auto agreed to defend Flexdar against IDEM's claims under a reservation of State Auto's right to deny coverage and to file a declaratory judgment action to determine State Auto's obligations under the policies. State Auto then filed this declaratory judgment action, contending that coverage for the TCE contamination at issue was excluded pursuant to the pollution exclusion present in the policies. Both Flexdar and State Auto moved for summary judgment on the issue of coverage.

In support of its summary judgment motion, State Auto designated the insurance policies, highlighting the following "absolute pollution exclusion" language:

_____

[1] The policies list the named insured as "Flexdar, Inc." and "RTS Realty"; RTS is also named as a defendant in this action. See Appellant's App. at 15, 847. We refer to the defendants collectively as "Flexdar."

2

2. Exclusions.
This insurance does not apply to:

. . . .

f. Pollution
(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

. . . .

(2) Any loss, cost or expense arising out of any:
(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Appellant's App. at 976-77. In further support of its argument, State Auto identified the Indiana "business operations" endorsement to the policies, which provides in pertinent part, "This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location." Appellant's App. at 989.

In support of its cross-motion for summary judgment, Flexdar argued the language of State Auto's pollution exclusion was ambiguous and therefore should be construed against State Auto and in favor of coverage. The trial court agreed and entered summary judgment in favor of Flexdar. The Court of Appeals affirmed, State Auto. Mut. Ins. Co. v. Flexdar, Inc., 937 N.E.2d 1203 (Ind. Ct. App. 2010), holding that the pollution exclusion is ambiguous and therefore must be construed in favor of coverage, and that the Indiana pollution exclusion endorsement language did not cure the ambiguity. We granted transfer. See Ind. Appellate Rule 58(A).

**Standard of Review**

When reviewing a summary judgment ruling, we use the same standard as the trial court. That is, "summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." Ashby v. Bar Plan Mut. Ins. Co., 949 N.E.2d 307, 310 (Ind. 2011) (internal quotation marks and citation omitted). Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment. See Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd., 865 N.E.2d 571, 574 (Ind. 2007); Bosecker v. Westfield Ins. Co., 724 N.E.2d 241, 243 (Ind. 2000). "It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049, 1056 (Ind. 2001) (internal quotation marks omitted) (quoting Bosecker, 724 N.E.2d at 244). This is especially true where the language in question purports to exclude coverage. USA Life One Ins. Co. of Ind. v. Nuckolls, 682 N.E.2d 534, 538 (Ind. 1997). Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable. W. Bend Mut. v. Keaton, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001), trans. denied. "Where provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity." Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co., 698 N.E.2d 770, 773 (Ind. 1998). Where ambiguity exists not because of extrinsic facts but by reason of the language used, the ambiguous terms will be construed in favor of the insured for purposes of summary judgment. See Cinergy, 865 N.E.2d at 574.

**Discussion**

The language of the pollution exclusion at issue in this case is no stranger to this Court. In fact, we have interpreted this or similar language on no fewer than three occasions, reaching the same result each time. We first confronted this language in American States Insurance Co. v. Kiger, 662 N.E.2d 945 (Ind. 1996). That case concerned coverage for environmental contamination caused by leakage of gasoline from a gas station's underground storage tanks.

4

We found language virtually identical to the language here to be ambiguous. Specifically, we held that because "the term 'pollutant' does not obviously include gasoline and, accordingly, is ambiguous, we . . . must construe the language against the insurer who drafted it." Id. at 949. We reached this conclusion notwithstanding the fact that "pollutant[ ]" was defined in the Kiger policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Id. at 948. "Clearly," we concluded, "this clause cannot be read literally as it would negate virtually all coverage." Id. State Auto characterizes Kiger as limited to its facts – that is, as applying only to a gas station's claim for a gasoline leak under a garage policy. See Appellant's Pet. to Trans. at 5 (inferring that Kiger's conclusion that the term "pollutant" is ambiguous is "inextricably linked to this Court's concern that a garage policy covering a gas station's operations would exclude a major source of its potential liability without explicitly stating so").[2] We disagree with State Auto's reading of Kiger. The opinion itself did not suggest that it was narrowly limited to its facts. Indeed, less than two months after our decision in Kiger, we found an insurer had a duty to defend a solid waste disposer against an action by the United States Environmental Protection Agency. Seymour Mfg. Co. v. Commercial Union Ins. Co., 665 N.E.2d 891 (Ind. 1996). One of the policies at issue in Seymour excluded coverage for losses "arising out of pollution or contamination (1) caused by oil, or (2) caused by the discharge or escape of any other pollutants or contaminants." Seymour Mfg. Co. v. Commercial Union Ins. Co., 648 N.E.2d 1214, 1218 (Ind. Ct. App. 1995). Recognizing that Kiger found the word "pollutant" to be ambiguous, we again construed this language against the insurer and found a duty to defend. Seymour, 665 N.E.2d at 892.[3]

---

[2] State Auto argues that its "business operations" endorsement addresses the concerns this Court expressed in Kiger by adding the language that the pollution exclusion applies "whether or not the irritant or contaminant has any function in your business, operations, premises, site or location." Br. of Appellant at 45. We agree with the Court of Appeals that this provision "takes effect only when the contaminant at issue has first been identified as a pollutant and the pollution exclusion has been determined to apply." Flexdar, 937 N.E.2d at 1212. As discussed below the exclusion itself is ambiguous and unenforceable, and therefore "the endorsement form does not come into play and is thus unavailing." Id.

[3] In apparent response to the holdings in Kiger and Seymour, the Indiana legislature passed a bill in 1997 more specifically defining the term "pollutant" in insurance policies. The definition included as a "pollutant" "any substance . . . subject to regulation" under certain state and federal environmental statutes. Governor Frank O'Bannon vetoed the bill, stating that the language "should be a private contractual matter between an insurer and its insured . . . . The insurance industry can address the

In 2002, we were again presented with a pollution exclusion like the one at issue here. See Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 40 (Ind. 2002). In Freidline, owners of a commercial building claimed coverage after toxic carpet glue fumes released during the installation of new carpet injured employees who worked in the building. Id. at 39. Because carpet glue fumes were not specifically included in the policy's definition of pollutants, the Court of Appeals found the exclusion ambiguous and construed it against the insurer so as not to exclude the claimed coverage. Id. at 40. We unanimously "agree[d] and summarily affirm[ed] the Court of Appeals on this point." Id. We also rejected the insurer's attempt to distinguish Kiger and Seymour on the basis that they involved traditional environmental cleanup for businesses regularly handling toxic substances. See id. at 42 ("[W]e refute these contentions by summarily affirming the Court of Appeals on the pollution exclusion coverage issue . . . ."). In an effort to distinguish Freidline, State Auto points to our mention there of the pollution exclusion as an "evolving" area of the law. However, by this characterization we merely acknowledged the legitimacy – not the correctness – of the plaintiff's argument against coverage in the context of the defendant's bad faith claim. Freidline is not distinguishable on this basis.

In a 2005 case, we did not address pollution exclusions directly but recognized our previous declaration that under Indiana law, the definition of "pollutants" in such exclusions is ambiguous. We observed that our courts have "consistently construed the pollution exclusion against insurance companies." Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005).[4]

_____

problem by drafting a clear and unambiguous contractual pollution exclusion." Flexdar, 937 N.E.2d at 1210 (alteration in original) (citations omitted). We mention this solely to provide more background on the pollution exclusion in Indiana.

[4] The Court of Appeals has repeatedly and consistently applied this Court's precedent to find similar pollution exclusion language ambiguous. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Standard Fusee Corp., 917 N.E.2d 170, 185 (Ind. Ct. App. 2009) ("[W]e find that the pollution exclusion is ambiguous and unenforceable under Kiger and the line of cases following Kiger . . . ."), rev'd on other grounds by 940 N.E.2d 810, 812 n.1 (Ind. 2010); Travelers Indem. Co. v. Summit Corp. of Am., 715 N.E.2d 926, 935 (Ind. Ct. App. 1999) ("We follow the lead of our supreme court and conclude that the pollution exclusion in the policies here is ambiguous and is construed against [the insurer] to not exclude coverage for the environmental claims made against [the insured].").

Here, State Auto drafted a policy excluding coverage for losses resulting from "pollutants." State Auto defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Appellant's App. at 977. As we recognized in Kiger, "this clause cannot be read literally as it would negate virtually all coverage." Kiger, 662 N.E.2d at 948. In other words, practically every substance would qualify as a "pollutant" under this definition, rendering the exclusion meaningless. Accord MacKinnon v. Truck Ins. Exch., 73 P.3d 1205, 1216 (Cal. 2003) (recognizing that "the definitional phrase 'any irritant or contaminant' is too broad to meaningfully define 'pollutant'"). To avoid such a result, State Auto urges us to adopt what it describes as a "common sense approach" and apply the pollution exclusion in situations where, as here, the release would "ordinarily be characterized as pollution." See Appellant's Pet. to Trans. at 11 (citing Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037 (7th Cir. 1992) (applying Illinois and Missouri law)). This is appropriate, State Auto argues, because the purpose of the pollution exclusion is to exclude coverage for costs associated with government-ordered cleanup of pollution and not to exclude claims that do not involve "environmental contamination." See Appellant's Pet. to Trans. at 11. State Auto also points out that Indiana's interpretation of pollution exclusions differs from the interpretations of most other states.

Courts and commentators identify essentially two main views when it comes to interpreting these exclusions, namely: a "literal" approach and a "situational" approach. See Apana v. Tig Ins. Co., 574 F.3d 679, 682-83 (9th Cir. 2009). See also generally 9 Steven Plitt, et al., Couch on Insurance 3d § 127:6 (2008); Louis A. Chiafullo & David C. Kane, Application of the Absolute Pollution Exclusion to "Nontraditional" Pollution, 22 Envtl. Claims J. 287 (2010). Jurisdictions employing a "literal" view of the absolute pollution exclusion generally hold the exclusion to be unambiguous in all circumstances. Where a substance is acting in any manner as an "irritant or contaminant," damage caused thereby is excluded from coverage. As we noted in Kiger, the difficulty with this view is that it eliminates practically all coverage yielding, in our opinion, untenable results. See, e.g., Maxine Furs, Inc. v. Auto-Owners Ins. Co., 426 Fed. App'x. 687, 688 (11th Cir. 2011) (per curiam) (applying Alabama law and holding that the aroma of curry escaping from an Indian restaurant and damaging merchandise in an adjacent fur

7

salon was a "contaminant" under the pollution exclusion and the damage was therefore not covered); Noble Energy, Inc. v. Bituminous Cas. Co., 529 F.3d 642, 646-47 (5th Cir. 2008) (applying Texas law and finding no coverage for injuries from a truck explosion fed by combustible vapors released during unloading of the truck's oilfield waste cargo because the cargo and vapors constituted a "solid, liquid, gaseous or thermal irritant or contaminant including . . . fumes . . . and waste").

Jurisdictions applying a more "situational" approach look to factual context and typically uphold the exclusion only in cases of "traditional" environmental contamination. See, e.g., MacKinnon, 73 P.3d at 1218 (holding exclusion does not apply to landlord's negligent application of pesticide resulting in tenant's death). While this framework may be more palatable than the literal view, it can still be problematic because the concept of what is a "traditional" environmental contaminant may vary over time and has no inherent defining characteristics.[5] This leaves courts in the awkward and inefficient position of making case-by-case determinations as to the application of the pollution exclusion.

Indiana has gone in a different direction. Applying basic contract principles, our decisions have consistently held that the insurer can (and should) specify what falls within its pollution exclusion. In fact, State Auto has over the years promulgated an *Indiana* "business operations" endorsement, see supra p. 3, and an *Indiana* endorsement defining "pollutant," see infra p. 9. Where an insurer's failure to be more specific renders its policy ambiguous, we construe the policy in favor of coverage. Our cases avoid both the sometimes untenable results produced by the literal approach and the constant judicial substance-by-substance analysis necessitated by the situational approach. In Indiana, whether the TCE contamination in this case would "*ordinarily* be characterized as pollution," Appellant's Pet. to Trans. at 11 (emphasis

---

[5] TCE is an example of just such a substance. Over the years it has been used in applications including the manufacture of food products and in the medical field as an anesthetic. See U.S. Environmental Protection Agency, Status Assessment of Toxic Chemicals: Trichlorethylene 9 (1979). Today TCE is listed on both the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List of Hazardous Substances and the Agency for Toxic Substances and Disease Registry ToxFAQs™. It is also notable that environmental cleanup statutes such as CERCLA are retroactive. That is to say, CERCLA imposes penalties for actions – such as the disposal of certain substances – that were perfectly legal at the time they occurred. See, e.g., Robin Kundis Craig et al., Toxic and Environmental Torts: Cases & Materials 471 (2011).

added), is, in our view, beside the point. The question is whether the language in State Auto's policy is sufficiently unambiguous to identify TCE as a pollutant. We are compelled to conclude that it is not.

State Auto maintains that "any reasonable policyholder would expect the release of chemical solvents into soil and groundwater [to constitute] pollution." Appellant's Pet. to Trans. at 12. It is true that we interpret policy terms "from the perspective of an ordinary policyholder of average intelligence." Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009) (citation omitted). But Indiana precedent has consistently refused to apply a pollution exclusion like the one at issue in this case on grounds of ambiguity. It would thus appear that an ordinary policyholder of reasonable intelligence would interpret the language in State Auto's policy much differently than is advanced here. This is especially so because the language at issue in this case excludes coverage. Thus we must resolve any doubts against the insurer. See id. (citing Kiger, 662 N.E.2d at 947). After all, "[t]he insurance companies write the policies; we buy their forms or we do not buy insurance." Id. (citation omitted). By more careful drafting State Auto has the ability to resolve any question of ambiguity. And in fact it has done so. In 2005 State Auto revised its policies to add an "Indiana Changes – Pollution Exclusion" endorsement. The language more specifically defined the term "pollutants":

> "Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils . . . carbon monoxide, and other exhaust gases . . . mineral spirits, and other solvents . . . tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals . . . . chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides . . . and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances** (1997 and all subsequent editions), **Agency for Toxic Substances And Disease Registry ToxFAQs™**, and/or **U.S. Environmental**

**Protection Agency EMCI Chemical References Complete Index**.

Appellant's App. at 1323 (emphasis in original).[6]

**Conclusion**

Indiana decisions have been consistent in recognizing the requirement that language of a pollution exclusion be explicit. "To unsettle the law . . . would show scant respect for the principle of <u>stare</u> <u>decisis</u>." <u>CSX Transp., Inc. v. McBride</u>, ___ U.S. ___, 131 S. Ct. 2630, 2639-40 n.4 (2011). We see no reason to abandon settled precedent.

The judgment of the trial court is affirmed.

Dickson, J., concurs.
David, J., concurs in result.
Sullivan, J., dissents with separate opinion in which Shepard, C.J., joins.

---

[6] Becoming effective as of 2005, the "Indiana Changes – Pollution Exclusion" endorsement, was not a part of CGL insurance policies at issue in this case.

**Sullivan, Justice, dissenting.**

The Court holds that American States Insurance Co. v. Kiger, 662 N.E.2d 945 (Ind. 1996), demands that the pollution exclusion found in most general liability insurance policies be ignored. I respectfully dissent.

A few days ago, Judges Richard A. Posner, Diane P. Wood, and David F. Hamilton, joined in a decision enforcing a pollution exclusion in a case for all relevant purposes the same as this. Scottsdale Indem. Co. v. Vill. of Crestwood, Nos. 11-2385, 11-2556, 11-2583, 2012 U.S. App. LEXIS 5069 (7th Cir. Mar. 12, 2012). Their decision is worthy of review here, both for its clarity and applicability.

At issue in the Crestwood case was whether "the pollution exclusion . . . found in most general liability insurance policies" – essentially the same exclusion in essentially the same form policy at issue here – was triggered by tort complaints alleging contamination of a well by a substance called "perc" (perchloroethylene, also known as tetrachloroethylene). Id. at *1-2, 3.

Crestwood uses the hypothetical situation of a tanker truck crashing and spilling perc, upon which another vehicle skids and crashes. Although perc is a pollutant, the Court says, "it would be absurd to argue . . . that a claim arising from such an accident would be within the pollution exclusion, since in no reasonable sense of the word 'pollution' was the driver a victim of pollution." Id. at *6.

In Kiger, Justice DeBruler used the example of a gas station customer's slip on a gasoline or grease spill to make the same point: that the pollution exclusion could not deny "coverage for a large segment of the gas station's business operations." 662 N.E.2d at 948-49. This only makes sense because, as Crestwood says, "a literal reading of the pollution exclusion would exclude coverage for acts remote from the ordinary understanding of pollution harms and unrelated to the concerns that gave rise to the exclusion." 2012 U.S. App. LEXIS 5069 at *5 (citations omitted).

"The business of insurance is covering losses," the Seventh Circuit judges say in Crest-wood, "but this is provided the company can estimate within a reasonable range the size of the losses that it is likely to be required to reimburse the policyholders for. Otherwise it can't set premiums that will be high enough to compensate it for the risk of having to reimburse the losses it's insuring, without being so high that no one will buy its policies." Id. at *7-8. "Environmental damage is often very difficult to detect until it has become extensive, let alone to predict, or estimate its likely extent, in advance; and the financial consequences can be horrific but again are unpredictable." Id. at * 10.

The pollution exclusion, therefore, allows a business to buy insurance to protect it from ordinary tort liability (the truck crash or the grease spill) without having to pay an additional premium amount necessary to provide coverage to those enterprises with a high risk of polluting in the ordinary sense – contaminating wells, for example.

All of this conforms to our jurisprudence – at least until today's case. Kiger dealt with the treatment of gasoline at a gas station under a garage policy. To hold gasoline a "pollutant" under the policy would have "provided no coverage for a large segment of the gas station's business operations." Kiger, 662 N.E.2d at 949. To the same effect were the toxic fumes from substances used to install carpet in an office building at issue in Freidline v. Shelby Insurance Co., 774 N.E.2d 37 (Ind. 2002). Like sickness caused by paint fumes or fumes leaking from a defective fluorescent light fixture, the harm in Freidline was "remote from the ordinary understanding of pollution harms and unrelated to the concerns that gave rise to the exclusion." Crestwood, 2012 U.S. App. LEXIS 5069 at *5 (citations omitted).

Here, by contrast, trichloroethylene (TCE) was discovered contaminating the soil and groundwater both on and off the site of Flexdar's rubber-stamp and printing-plate manufacturing facility in Indianapolis. This obviously meets "the ordinary understanding of pollution harms" and is clearly related "to the concerns that give rise to the exclusion." In point of fact, Flexdar's business is based on neither the sale nor the storage of trichloroethylene; enforcing the exclusion in no way deprives Flexdar of coverage for its exposure to the ordinary tort risks of its business.

2

Kiger has never before stood for the proposition that all pollution exclusions are unenforceable. Today's case moves Indiana law in that direction. The immediate consequence will be premium increases as insurers seek to charge for the increased risks that the Court today requires them to cover. Hoosier businesses who have little risk of being sued for polluting will face a Hobson's choice: paying higher premiums for coverage they don't need, thereby dissipating their financial resources, or going without coverage, thereby exposing themselves to risk of loss from ordinary tort liability.

I also observe that in addition to the factual differences between this case and Kiger, the policy language differs as well. The policy in this case (but not in Kiger) contains a "business operations endorsement," expressly providing that the pollution exclusion "applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location." Appellant's App. 989. In another case, the Seventh Circuit found that this endorsement "buttressed" its conclusion that a pollution exclusion was enforceable. W. Bend Mut. Ins. Co. v. U.S. Fid. & Guar. Co., 598 F.3d 918, 923 (7th Cir. 2010) (Indiana law).

I would reverse the trial court's decision and find in favor of the insurer.

Shepard, C.J., joins.