# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**GEORGE M. PLEWS**
**JEFFREY D. CLAFLIN**
**JONATHAN P. EMENHISER**
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
THE CINCINNATI INSURANCE COMPANY:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
**CARRIE G. DOEHRMANN**
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FLM, LLC, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1401-PL-17 |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) | |
| et al., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-0501-PL-943

**December 29, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

This is the second appeal in this case. FLM, LLC ("FLM"), owns land in Indianapolis that it leased to International Recycling Inc. ("IRI"). IRI retrieved foundry sand from a Chrysler foundry and stored it on the leased property until it could be disposed of elsewhere. Chrysler stopped paying IRI, which consequently went out of business and abandoned 100,000 tons of sand on FLM's property. Environmental and legal problems ensued, and FLM sought indemnification from The Cincinnati Insurance Company ("Cincinnati"), IRI's insurer. Cincinnati filed a motion for partial summary judgment asserting that no property damage coverage is available under its policies. FLM filed a cross-motion for summary judgment asserting that both property damage coverage and personal injury coverage are available under Cincinnati's commercial general liability ("CGL") and commercial umbrella policies. The trial court issued an order granting Cincinnati's motion "as against any insurance coverage obligation." Appellant's App. at 2174.

FLM appealed and again asserted that both personal injury coverage and property damage coverage are available under Cincinnati's policies. A divided panel of this Court issued an opinion in that appeal. In *FLM, LLC v. Cincinnati Insurance Co.*, 973 N.E.2d 1167 (Ind. Ct. App. 2012), *trans. denied* (2013), the majority noted that several issues had been raised but found one issue dispositive: whether IRI's abandonment of the sand is covered by the personal injury provisions of Cincinnati's policies. The majority held that it is and did not address property damage coverage. The last line of the majority opinion states: "We therefore reverse the trial court's entry of summary judgment in favor of Cincinnati and

2

remand with instruction to enter summary judgment in favor of FLM." *Id.* at 1177. The third judge disagreed with the majority's holding but concurred in result on the basis that property damage coverage is available under the policies. Cincinnati filed a petition for transfer to the Indiana Supreme Court, which was denied.

The trial court then asked FLM and Cincinnati to submit proposed orders pursuant to the Court of Appeals' remand. FLM submitted a proposed order finding that *both* personal injury coverage and property damage coverage are available under the policies, vacating the trial court's prior order, denying Cincinnati's motion for partial summary judgment, and granting FLM's cross-motion for summary judgment. Cincinnati did not submit a proposed order and was granted an opportunity to file an objection or a response to FLM's proposed order. Cincinnati did not file an objection but did file an interpleader motion paying $1.7 million into the trial court ($1 million for the personal injury coverage limits under the CGL policy plus the $1 million aggregate limits under the umbrella policy, minus $300,000 that was paid to a third party). FLM filed a response to the interpleader motion asserting that it is entitled to the $1.7 million and reserving the right to claim that the remaining limits exceed $1.7 million.

After a hearing, the trial court signed FLM's proposed order and an entry stating that the parties had agreed that the order should be entered; that the interpleaded funds should be ordered paid to FLM; and that further issues remained regarding whether additional coverage was available under the policies. FLM filed a summary judgment motion asserting that the CGL policy contains separate $1 million limits for property damage coverage and personal

3

injury coverage. Cincinnati filed a response and a motion to reconsider, rescind and/or modify the trial court's remand order asserting that no court had determined that property damage coverage was available and that Cincinnati had not agreed that the entry of FLM's proposed order was proper. After a hearing, the trial court issued an order granting Cincinnati's motion to reconsider and striking all references to property damage coverage from its prior order. The trial court also issued an order denying FLM's summary judgment motion as to separate coverage limits, entering judgment for FLM on coverage only as to personal injury, and decreeing that the $1.7 million limits of the policies had been interpleaded and released to FLM in full satisfaction of the judgment.

FLM now appeals, raising three issues: (1) whether Cincinnati waived any challenge to FLM's proposed order by failing to make a timely objection and expressly agreeing to it; (2) whether property damage coverage is available under the CGL policy; and (3) whether the CGL policy has separate $1 million limits for property damage coverage and personal injury coverage. We decide these issues as follows: (1) regardless of any waiver by Cincinnati, the trial court had inherent power to reconsider and revise its nonfinal order; (2) property damage coverage is available under the CGL policy; and (3) the CGL policy has separate $1 million limits for property damage coverage and personal injury coverage. Therefore, we reverse and remand with instructions to enter summary judgment in FLM's favor as to property damage coverage and separate coverage limits. The amount of coverage over $1.7 million to which FLM may be entitled must be determined in further proceedings.

The relevant facts are largely undisputed. In 1999, FLM leased some Indianapolis property to IRI, which retrieved foundry sand from a Chrysler foundry and stored it on the property until it could be disposed of elsewhere. In 2002, Chrysler stopped paying IRI, which consequently went out of business and abandoned over 100,000 tons of sand on FLM's property. CSX Transportation, Inc. ("CSX"), which owned and operated an adjacent railroad right-of-way, complained that the sand was migrating onto its property and interfering with its operations. The Indiana Department of Environmental Management ("IDEM") investigated complaints about the sand and issued a notice of violation to IRI, FLM, and Chrysler in 2004 and ordered them to remove the sand. Also, the City of Indianapolis ("the City") issued a notice of municipal code violation to FLM due to sand migration and "ordered that sediment controls be installed and that the sand be removed unless a drainage permit was obtained. FLM, in turn, sought indemnity under the lease from IRI." *Id*. at 1171.

In 2005, FLM filed a complaint against Cincinnati, IRI's insurer, seeking a declaration that IRI has coverage under its CGL policy and umbrella policy "for the environmental liabilities asserted by IDEM and the City, as well as FLM's own action against IRI arising from those claims." *Id*. at 1172 (footnote omitted). Cincinnati filed its answer and counterclaim, seeking a declaration that no coverage is available under the policies.

---

[1] We heard oral argument on November 10, 2014, in Indianapolis. We thank counsel for their excellent presentations.

Cincinnati also filed a third-party complaint for declaratory judgment "in order to bring Chrysler, IRI, IDEM, and the City as indispensable parties into the coverage action." *Id*. "CSX filed a cross-complaint against IRI and FLM seeking trespass and nuisance damages related to the migration of foundry sand onto its property." *Id*.

In December 2007, Cincinnati filed a motion for partial summary judgment requesting a determination that no coverage exists under the policies for the claims made by IDEM, the City, Chrysler, or FLM against IRI; the motion specifically excluded CSX's claims. In February 2008, FLM filed a response and a cross-motion for summary judgment seeking a determination that coverage is available for those claims, including those made by CSX, under both the property damage and personal injury provisions in the policies. "Chrysler opposed Cincinnati's motion, joined FLM's cross-motion and filed its own cross-motion for summary judgment." *Id*. In November 2008, the trial court issued an order granting summary judgment to Cincinnati "as against any insurance coverage obligation" as to the claims made by IDEM, the City, and FLM, as well as denying FLM's cross-motion for summary judgment. Appellant's App. at 2174. The court also denied Chrysler's cross-motion for summary judgment as moot.

Both FLM and Chrysler filed an appeal, which was delayed several years by Chrysler's bankruptcy. While the appeal was pending, Cincinnati settled with CSX for $300,000. In August 2012, a divided panel of this Court issued an opinion in that appeal. The majority (Judge Kirsch, joined by Judge Vaidik) stated, "FLM and Chrysler appeal raising several issues, of which we find the following dispositive: whether IRI's

6

abandonment of sand constitutes a 'wrongful entry' or 'invasion of the right of private occupancy' covered by the 'personal injury' provisions of the insurance policies." *FLM*, 973 N.E.2d at 1169-70. The majority held that it does and stated: "We therefore reverse the trial court's entry of summary judgment in favor of Cincinnati and remand with instruction to enter summary judgment in favor of FLM." *Id*. at 1177. The majority did not address property damage coverage. Judge Bradford disagreed with the majority's holding but concurred in result on the basis that property damage coverage is available under the policies. Cincinnati filed a petition for transfer to the Indiana Supreme Court, which was denied in April 2013.

On May 6, 2013, the trial court asked the parties to submit proposed orders or an agreed proposed order pursuant to this Court's remand. On May 9, 2013, FLM submitted a proposed order to the trial court and Cincinnati finding coverage under *both* the personal injury and property damage provisions of the policies, vacating the trial court's prior order, denying Cincinnati's motion for partial summary judgment, and granting FLM's cross-motion for summary judgment. Cincinnati did not submit a proposed order and instead was granted until May 31, 2013, to file an objection or a response to FLM's proposed order. Cincinnati did not file an objection but did file an interpleader motion paying $1.7 million into the trial court ($1 million for the personal injury limits under the CGL policy plus the $1 million aggregate limits under the umbrella policy, minus the $300,000 that was paid to CSX). FLM filed a response to the interpleader motion asserting that it was entitled to the entire $1.7 million. In a footnote, FLM stated, "By responding to Cincinnati's 'Interpleader'

and asserting a claim for the deposited funds, FLM does not concede that $1.7 million is the remaining balance. To the contrary, FLM expressly reserves the right to claim that the remaining limits exceed $1.7 million." Appellant's App. at 2191 n.1.

The trial court held a hearing on July 10, 2013. FLM's counsel, George Plews, stated, "You got no objections from anybody [on FLM's proposed order] and so we think that one probably should be entered." Tr. at 6.[2] When the trial court asked if the parties still had "differences" regarding the interpleader, Plews replied,

> Well here's---the difference is I think---the difference between Cincinnati and ourselves is we're only---as to the limits there are on the policy.… We say there's 3 Million Dollars limits available for coverage of this claim [$1 million each for personal injury and property damage limits under the CGL policy plus the $1 million aggregate limits under the umbrella policy] and they say there's 2 Million Dollars.

*Id*. at 7-8. After a brief discussion about policy limits, the following colloquy occurred:

> THE COURT: I don't know if Rick [Skiles, Cincinnati's counsel] had expected that or not or it's fair to expect him to respond to this or not or how should we proceed and I don't mind you saying whatever you want to do but Rick what do you want to do?
>
> MR. SKILES: Well George has been totally accurate with what he said. When FLM filed its brief there was a footnote where they said, hey we're not really agreeing that there's only 1.7 Million and we're going to reserve that argument if we want to argue it at a later date and I immediately sent an email to John [Emenhiser, Plews's cocounsel] and said hey, you know, are you serious about this because if you're serious I need to know it. Jonathan emailed me last---YESTERDAY and said you know here's why we think that there is an additional amount of money and he also sent me some cases I think this morning but I haven't been to my office. So, while I have no problem with Jonathan and George arguing their position it seems to me that it would

[2] FLM included the transcript of this hearing and a subsequent hearing in its appellant's appendix in contravention of Indiana Appellate Rule 50(F), which states, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

8

help Cincinnati if I knew what their position was in terms of a briefing schedule.… In other words, I have a summary of Jonathan's argument but I really don't know where they're coming from. I'd like to respond to it formally.

*Id*. at 11-12. The trial court asked Plews for his thoughts:

MR. PLEWS: We don't have any problem with---this was the third issue, the third issue was the limits and so I think that what we have established, maybe, that the first two---as to the first two issues which is the entry of summary judgment and the release of the 1.7 there's no controversy.

THE COURT: Is that true?

MR. SKILES: Yeah, Judge I---as long as it has no---as long as it has no prejudicial effect on Cincinnati I don't care if the court releases the 1.7 to George and Jonathan and his client because he's correct nobody has challenged that and under Cincinnati's belief we tendered that money into court for the Court to divide it up how it saw fit.

THE COURT: Okay. So we all agree to that so what's remaining…

MR. PLEWS: So the third issue are the…

THE COURT: …what's remaining as I indicated the issue is whether or not there's any other limits that should be paid in.

MR. PLEWS: Right.

MR. SKILES: And our position is---our position is that there are two One Million Dollar policies…

*Id*. at 13-14.

The parties agreed to further briefing on the limits issue, and the trial court said, "So I guess what I'm going to do as a result of this discussion or hearing is enter by everybody's agreement I guess [FLM's] Proposed Order Granting their Motion for Summary Judgment."

9

*Id.* at 32. The trial court signed the order ("the July 10 Order") that day. The court also

signed an entry that reads in pertinent part as follows:

1. Parties agree that [FLM's] proposed order granting summary judgment should be entered.

2. Parties agree that [Cincinnati's] interpleaded funds of $1.7 million should be ordered paid to [FLM].

3. Further issues remain regarding whether [Cincinnati's] coverage includes additional amounts that should be paid on remand.

Appellant's App. at 2254.

On August 2, 2013, Skiles and his cocounsel filed a motion to withdraw their

appearance, which the trial court granted. Cincinnati retained new counsel. On August 9,

2013, FLM filed a motion for summary judgment asserting that Cincinnati's CGL policy

"contains separate, independent liability limits of $1 million each for both 'property damage'

and 'personal injury' coverages." *Id.* at 2258. On September 9, 2013, Cincinnati filed a

response to FLM's summary judgment motion and a motion to reconsider, rescind and/or

modify the July 10 Order that reads in pertinent part as follows:

7. There has never been a determination, either by this court or by the Court of Appeals, that there is "property damage" which meets the definition of the Cincinnati policies.

….

10. The "Entry of July 10, 2013" erroneously finds that Cincinnati agreed to the proposed order granting summary judgment to FLM, LLC. FLM also contends in its Brief in Support of Motion for Summary Judgment that "at the July 10, 2013 hearing Cincinnati agreed that the entry of the Court's Order was proper. This is not the case. In fact, then counsel for Cincinnati, Richard Skiles, during the course of these proceedings, specifically indicated that he wished to consider FLM's written position concerning the possible multiple

10

policy limits at issue and to likewise respond in writing to those arguments. Mr. Skiles further qualified any agreement on his part "as long as it has no prejudicial effect on Cincinnati." Mr. Skiles' statements do not constitute an agreement to FLM's tendered order following remand. A copy of the Transcript of Proceedings is attached hereto. Moreover, Cincinnati did not tender a similar proposed order because it responded to the Court of Appeals decision by properly submitting a request for Interpleader and making a deposit of the policy funds at issue.

11. Note that the July 10, 2013 Order is not a final Order. It is well settled law in Indiana that "a trial court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment." Haskell v. Peterson Pontiac GMC Trucks, 609 N.E.2d 1160, 1163 (Ind. Ct. App. 1993).

*Id*. at 2430-31.

The trial court held a hearing on the motions on September 27, 2013. Plews stated that Cincinnati had until May 31 "to make any objection if they wanted to make [to FLM's proposed order] and they didn't do it. And that's a waiver." Tr. at 42. He later explained,

Anyway, the waiver comes in three (3) parts, Your Honor. It comes first if they're not filing any objection by the date you gave him to file an objection. Then also they don't file any objection by the July 10th hearing. I mean we have a hearing on the whole matter on July 10th. And in fact you make an entry under July 10th right on the date when everything is still fresh in everybody's mind saying along other things that there's an agreement that the plaintiff's Summary Judgment motion or the Summary Judgment order which tendered back in May can be entered.

*Id*. at 48. Plews further observed that the Court of Appeals' majority did not hold that IRI is not entitled to property damage coverage and that the third judge would have held that it is. He also argued that FLM is entitled to separate $1 million limits for personal injury coverage and property damage coverage under the CGL policy. The trial court invited the parties to submit proposed orders, which they did.

11

On December 16, 2013, the trial court issued an order granting Cincinnati's motion to reconsider that reads in pertinent part as follows:

6. The Court of Appeals did not find the issue of whether there was coverage under the policies' "property damage" provisions dispositive and did not reverse this Court's November 6, 2008 Order on that ground. This Court's November 6, 2008 Order ruling that no coverage exists under the "property damage" provisions of the policies has therefore been affirmed by the Indiana Court of Appeals.

7. FLM did not seek rehearing or transfer of the Indiana Court of Appeals' decision.

8. Following remand to this Court, FLM tendered a proposed Order which became this Court's Order of July 10 Granting FLM, LLC's Motion for Summary Judgment. This tendered proposed Order exceeded the scope of remand and included findings specifically determining that there was coverage under the policies['] "property damage" provisions – findings which conflict with the Court of Appeals Opinion and scope of the remand.

9. In response to the Opinion of the Court of Appeals, Cincinnati properly filed its Request for Interpleader and interpleaded the remaining policy limits of $1.7 million into the Court. The parties do not dispute that the $1.7 million constitutes the policies' limits for the "personal injury" coverage.

….

11. At the attorney conference held on July 10, 2013, counsel for Cincinnati stated that he did not agree to the July 10, 2013 proposed Order tendered by FLM to the extent that it was prejudicial to Cincinnati's interests and specifically requested time to review and respond to FLM's claims regarding the availability of additional limits under the "property damage" coverage.

….

13. The July 10, 2013 tendered Order proposed by FLM and signed by this Court contained specific findings related to coverage under the policies' "property damage" provisions which conflict with the Opinion issued by the Court of Appeals and the remand.

12

14.     All references to a finding of coverage under the "property damage" portions of the policies including [certain paragraphs] of the July 10, 2013 Order conflict with the opinion of the Indiana Court of Appeals and exceed the scope of the remand [and are hereby stricken].

Appellant's App. at 36-37.

The trial court also issued an order denying FLM's summary judgment motion that reads in pertinent part as follows:

6.     The Court of Appeals did not find the issue of whether there was coverage under the policy's "property damage" provisions dispositive and did not reverse this Court's November 6, 2008 Order on that ground. This Court's November 6, 2008 Order ruling that no coverage exists under the "property damage" provisions of the policies has therefore been affirmed by the Indiana Court of Appeals. The Indiana Court of Appeals remanded the case back to this Court with instructions to enter summary judgment in favor of FLM consistent with the Opinion.

7.     FLM did not seek rehearing or transfer of the Indiana Court of Appeals' decision.

8.     Following remand to this Court, FLM tendered a proposed Order which became this Court's Order of July 10 granting FLM, LLC's Motion for Summary Judgment. This tendered proposed Order exceeded the scope of remand and included findings specifically determining that there was coverage under the policies' "property damage" provisions – findings which conflict with the Court of Appeals Opinion and scope of the remand.

….

14.     "When a judgment has been reviewed by an appellate court and the cause remanded, it is the duty of the lower court to comply with the mandate and to obey the directions therein contained without variation." Holmes v. Holmes, 726 N.E.2d 1276, 1282 (Ind. Ct. App. 2000). Despite FLM's tendered July 10, 2013 Order Granting FLM's Motion for Partial Summary Judgment, this court has no authority to go beyond the scope of the remand.

15.     There are no further issues to be resolved in this matter.

13

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      FLM, LLC's Motion for Summary Judgment, filed on August 9, 2013 is Denied;

2.      Judgment is entered for FLM pursuant to the remand on the issue of coverage under the "personal injury" provision of the policies only; and

3.      The limits of $1.7 million of the Cincinnati policies have already been interpleaded into the Court and released to [FLM] in full satisfaction of this Judgment.

*Id*. at 39-41.

FLM now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

**Section 1 – Has Cincinnati Waived Any Challenge to the July 10 Order?**

FLM argues that "Cincinnati waived any objection to the entry of the July 10, 2013 order <u>and</u> expressly agreed to its entry. Both acts bound it, and no basis or need justified disturbing that judgment." Appellant's Br. at 25. FLM's waiver argument is well taken, but, as Cincinnati observes, this Court has "'long and consistently held a trial court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment.'" Appellee's Br. at 13-14 (quoting *Haskell v. Peterson Pontiac GMC Trucks*, 609 N.E.2d 1160, 1163 (Ind. Ct. App. 1993)); *see also* Ind. Trial Rule 54(B) (stating that nonfinal judgments are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties").

Consequently, we do not address FLM's waiver argument and instead will determine whether the trial court abused its discretion in revising the July 10 Order. *See In re Hammar*,

14

847 N.E.2d 960, 962 (Ind. 2006) ("A trial court's control and discretion to change its own rulings is firmly established in common law, and we will review a trial court's reconsideration of its prior rulings for abuse of discretion.'"). "An abuse of discretion occurs if the decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law." *Brown v. Brown*, 979 N.E.2d 684, 685 (Ind. Ct. App. 2012).

**Section 2 – Is Property Damage Coverage Available Under the CGL Policy?**

Before we may consider this question, we must first address whether the trial court abused its discretion in concluding that this Court affirmed its prior determination that no property damage coverage exists. In the first appeal, the majority *reversed* the trial court's judgment in favor of Cincinnati and remanded with instructions to enter summary judgment in favor of FLM as to personal injury coverage. "Generally, the effect of reversal by the Court of Appeals is to vacate and nullify a trial court's judgment and return the parties to the positions they held before its entry by the trial court." *Greater Clark Cnty. Sch. Corp. v. Myers*, 493 N.E.2d 1267, 1270 (Ind. Ct. App. 1986), *trans. denied* (1987). That is what happened here. The majority did not address the issue of property damage coverage and did not specifically disagree with Judge Bradford's determination that property damage coverage exists. So, although the majority could have (and indeed should have) addressed property damage coverage in response to FLM's argument that both coverages apply, it simply passed

15

on the issue and did not affirm the trial court's judgment, either implicitly or explicitly.[3] The trial court abused its discretion in concluding otherwise.

Because property damage coverage is ripe for consideration, we now address it on the merits. "The interpretation of an insurance policy is primarily a question of law and, therefore, is a question particularly suited for summary judgment." *FLM*, 973 N.E.2d at 1174. "Insurance policies are governed by the same rules of construction as other contracts and unambiguous terms in policies are given their ordinary meaning." *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 22 (Ind. Ct. App. 2012), *trans. denied.* "We interpret policy terms from the perspective of an ordinary policyholder of average intelligence." *Id.* (citation and quotation marks omitted). "An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *FLM*, 973 N.E.2d at 1174 (citation and quotation marks omitted). "Where there is an ambiguity, policies are to be construed strictly against the insurer." *Id.* (citation and quotation marks omitted).

The CGL policy states that Cincinnati "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Appellant's App. at 165. The insurance applies to "property damage" only if it "is caused by an 'occurrence' that takes place in the 'coverage territory'" and "occurs during the policy period." *Id.* The policy defines "property damage" in pertinent part as "[p]hysical injury to tangible property, including all resulting loss of use of that

---

[3] We decline to speculate about why the majority did not address property damage coverage.

property." *Id*. at 175. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. The term "accident" is not defined.

We agree with FLM that property damage coverage is available under the CGL policy, for the reasons stated in Judge Bradford's separate opinion in the first appeal. He noted that the parties' arguments focused on the meaning of the undefined term "accident":

> The question is whether the term only covers IRI's action of placing the foundry sand on FLM's land or whether it also encompasses the unintended consequences of that action. Put another way, because IRI unquestionably intended to put the sand on FLM's property, if the term "accident" does not also encompass unintended consequences of that non-accidental action, the property damage provisions would provide no coverage. Conversely, coverage *would* exist if the term "accident" encompassed unintended consequences of intentional actions.
>
> I believe that the Indiana Supreme Court's holding in *Auto-Owners Insurance Co. v. Harvey*, 842 N.E.2d 1279 (Ind. 2006), controls here. In *Harvey*, the issue was whether a policy provided coverage for the harm caused by the insured, Toby Gearheart, who pushed his girlfriend Brandy Harvey into the Wabash River, where she drowned. *Id*. at 1281. As here, the relevant policy provided coverage for an "occurrence," which that policy defined as "an accident that results in bodily injury or property damage and includes, as one occurrence, all conditions or all continuous or repeated exposure to substantially the same general harmful conditions." *Harvey*, 842 N.E.2d at 1283. Also as here, the policy did not define "accident." *Id*. While it was undisputed that Gearheart's push was intentional, it was not clear whether he intended Brandy to die. *Id*. at 1284-85. The question, then, was whether the push was an "accident" under the policy, because, while it was unquestionably intentional, it possibly had unintended consequences.
>
> The *Harvey* Court first noted that "Indiana case law has held that, 'in the context of insurance coverage, an accident means an unexpected happening without an intention or design.'" *Id*. at 1283 (citing *Terre Haute First Nat. Bank v. Pac. Emp'rs Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993); *Nat. Mut. Ins. Co. v. Eward*, 517 N.E.2d 95, 100 (Ind. Ct. App. 1987)). The Court then resolved the issue as follows:

17

In the present case, the policy states that Auto-Owners will pay for its insured's legal liability for "damages because of or arising out of bodily injury or property damage caused by an occurrence." Under the facts of this case, however, the meaning and application of this provision is unclear. The language used by Auto-Owners can reasonably be understood in two different ways, depending on whether "occurrence" means Gearheart's push or Brandy's drowning. The policy language does not require that the "occurrence" or "accident" be limited to the actions of the insured. The claimed damages clearly arise out of Brandy's death, and the coverage ambiguity thus is whether the death should be considered to have been caused by the event of Gearheart's pushing or by the event of Brandy's drowning. If the required "accident" refers to Gearheart's push, then it is undisputed that it did not occur unexpectedly or unintentionally. If it applies to Brandy's slip, fall, and drowning, however, it is not clear that the drowning was clearly unexpected and unintentional. It was obviously unexpected and unintentional from Brandy's perspective, and possibly so from Gearheart's point of view. We thus find the policy language ambiguous and must construe it against Auto-Owners, holding that the term "occurrence" applies to Brandy's slip, fall, and drowning, and not to Gearheart's push.

*Id*. at 1284-85.

I believe that the *Harvey* Court's analysis applies with equal force here, and would reach the same conclusion, *i.e.*, that "accident" refers not only to the volitional act of the insured but also any unintended consequences of that act. In this case, this interpretation leads to the conclusion that there is coverage pursuant to the property damage provisions of the Policies. As in *Harvey*, the Policies do not require that the "accident" be an action of the insured, meaning that the policy here contains the same ambiguity as the policy in *Harvey*. In other words, "accident" could just as easily be referring to IRI's actions as to the unintended consequences of those actions, and this ambiguity must be resolved in favor of coverage.

*FLM*, 973 N.E.2d at 1178-79 (footnote omitted). In the footnote, Judge Bradford noted "one

procedural distinction with *Harvey*":

18

[I]n that case, there existed a genuine issue of material fact regarding whether Gearheart intended Brandy's death, so the Court remanded for trial on the issue. Here, there does not seem to be any designated evidence that IRI intended for the foundry sand to contaminate FLM's property. Therefore, in my view there would be no need for trial on the issue of coverage, as there was in *Harvey*.

*Id.* at 1179 n.9.

We find Judge Bradford's reasoning persuasive and see no need to reinvent the wheel here. *See also Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1271-72 (Ind. Ct. App. 2009) (finding occurrence/accident under CGL policy where insured intentionally deposited fill dirt on another's property but did not intend to contaminate property), *trans. denied* (2010). Property damage coverage is available under the CGL policy, and the trial court abused its discretion in concluding otherwise. Therefore, we reverse and remand with instructions to enter summary judgment in FLM's favor on this issue.

### Section 3 – Does the CGL Policy Allow Separate $1 Million Limits?

Now that we have determined that both personal injury coverage and property damage coverage are available under the CGL policy, the question then becomes whether the policy allows separate $1 million limits for each coverage. "Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable." *State Auto Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012).

The CGL policy's table of contents indicates that the policy has three coverages: occurrence-based bodily injury and property damage liability under Coverage A, offense-

19

based personal and advertising injury liability under Coverage B,[4] and medical payments under Coverage C.  Appellant's App. at 164.  The CGL policy's declarations page reads in pertinent part as follows:

**LIMITS OF INSURANCE**

| | |
|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |

*Id*. at 163.  No general aggregate limit is listed.  The umbrella policy contains a schedule of underlying policies that reiterates these limits and lists the "general aggregate limit" for the CGL policy as "NONE."  *Id*. at 265.

The CGL policy's "Limits of Insurance" section reads in pertinent part as follows:

3.     The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4.     Subject to [limits not applicable here], the Each Occurrence Limit is the most we will pay for the sum of:

a.     Damages under Coverage A; and

b.     Medical expenses under Coverage C;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

*Id*. at 171.

---

[4] *See* Appellant's App. at 175 (defining "personal injury" in pertinent part as "injury, other than 'bodily injury,' arising out of one or more [specified] offenses," including "wrongful entry into, or invasion of the right of private occupancy of a … premises that a person occupies by or on behalf of its owner, landlord or lessor").

FLM asserts that the CGL policy

contains *no* language imposing any limit that only one coverage can apply to the same injury. If Cincinnati wanted to impose such a limitation it needed to do so. It did not. Cincinnati's [CGL] policy does not contain a general aggregate limit to limit amount[s] available when both the "property damage" and "personal injury" coverages apply to a claim. Cincinnati's umbrella policy confirms there is no aggregate limit.…

Cincinnati knew how to insert an aggregate limit – its umbrella policy contains such a limit on its Declarations page. (App. p. 265).[5] If Cincinnati wanted to impose a general aggregate limit (of $1 million or any other sum) in its [CGL] policy than it should have included it when it sold the policy. When an insurer knows how to add limiting language but fails to do so, it is reasonable to adopt a construction in favor of coverage. *State Auto Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 852 (Ind. 2012).

Given their distinct and independent nature it is not surprising that the primary policy provides separate and independent $1,000,000 limits for "property damage" and "personal injury" coverages. One limit applies to occurrence-based "property damage" coverage. The other applies to offense-based "personal injury" coverage. If both coverages apply to the claim, as they do here, then both are available to meet the claim.

Appellant's Br. at 43-44.

We agree with FLM in all respects. We have found no Indiana cases directly on point but are persuaded by FLM's citation to *Kitsap County v. Allstate Insurance Co.*, 964 P.2d 1173 (Wash. 1998). In that case, residents and the owner of a mobile home park in Washington filed several lawsuits in federal district court against Kitsap County and other defendants based on harm to health and property allegedly caused by emanations from a waste disposal site and landfill. The insurance policies at issue contained separate coverages

---

[5] The umbrella policy's declarations page states that the policy has a $1,000,000 each-occurrence limit and a $1,000,000 aggregate limit. Appellant's App. at 265.

for personal injury and property damage. In addressing a certified question from the district court regarding policy interpretation, the Washington Supreme Court considered the insurers' argument

> that if the County is permitted to obtain coverage for pollution-related damage under the personal injury provisions in the various policies issued to it, while at the same time it asserts that it is covered under the property damage or bodily injury provision of the policy, it will improperly result in the County receiving coverage under two different parts of the policy for the same allegations.

*Id*. at 1180. The court replied,

> There is, in short, no rule of law that we are aware of that prevents an insurance company from providing overlapping coverage in any policy that it issues. By the same token, we know of no authority for the proposition that an insured must elect which coverage it chooses if it has been furnished with overlapping coverage in a policy. Any insurer that is a party to this suit provided the coverage that can be ascertained from a plain reading of its entire policy or policies. If the claims against Kitsap County constitute "personal injury" as that term is defined in any policy, then coverage is available under that policy, notwithstanding the fact that additional coverage may be provided to the insured by other provisions in the policy.

*Id*.

We are also unaware of any rule of law that prevents an insurance company from providing overlapping coverage, and Cincinnati's CGL policy does not prohibit it under the facts of this case. Cincinnati asserts that the policy contains "an anti-stacking provision[6]

---

[6] A respected insurance treatise states,

> The right to stack concurrent coverages for a single loss … must … be distinguished from the right of an insured to recover under more than one type of coverage for a given loss. Although occasionally described as "stacking," the latter issue is more a question of the risks that fall within a particular type of coverage, and insureds generally are allowed to receive recovery under more than one coverage as long as they do not receive more than the amount of their loss, even when the policy contains an anti-stacking clause.

12 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 169:6 (3d ed. 2005) (footnotes omitted).

which prevents recovery of multiple limits under different coverages of the same primary policy when the damage arises out of the same occurrence[.]" Appellee's Br. at 25.[7] That provision reads in pertinent part as follows:

**Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form [i.e., the umbrella policy].

Appellant's App. at 173.

Cincinnati contends that "'Coverage Form' refers to the different coverages found in the policy, which is titled 'Commercial Liability Coverage Form.'" Appellee's Br. at 25 n.10 (quoting Appellant's App. at 165). We disagree, based on the plain language of the policy. The different coverages are called precisely what they are – "coverages" – and the policy itself is called a "form." Appellant's App. at 164-65. An example of an "other Coverage Form" would be an automobile liability coverage form.[8] Because there is no "other Coverage

---

[7] Cincinnati also asserts that FLM should have raised the issue of separate coverage limits in the first appeal but cites no authority for this assertion. FLM's 2008 cross-motion for summary judgment raised separate coverages, not separate coverage limits, and FLM was not required to raise both issues simultaneously. *See* Ind. Trial Rule 56(A) ("A party seeking to recover upon a claim, counterclaim, or cross-claim … may… move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.").

[8] We are unpersuaded by Cincinnati's reliance on *Certain Underwriters at Lloyd's London v. Valiant Insurance Co.*, 229 P.3d 930 (Wash. Ct. App. 2010), which involves two policies issued by affiliated companies. We are also unpersuaded by Cincinnati's unsupported assertion that "[p]reventing stacking of different coverages in the same policy is similarly confirmed by the fact that [FLM] paid just a single premium" for both property damage coverage and personal injury coverage. Appellee's Br. at 25. Nothing in the policy indicates that a separate premium must be paid for each coverage.

Form" at issue here, the provision does not apply. *See, e.g.*, *Argonaut Great Cent. Ins. Co. v. Casey*, 701 F.3d 829, 833-34 (8th Cir. 2012) (finding "Two or More Coverage Forms" provision inapplicable in single policy with separate liability coverage and underinsured motorist coverage limits). Moreover, we note that the provision applies only to an "occurrence," which relates specifically to property damage coverage, and not to an "offense," which relates specifically to personal injury coverage.

In sum, separate $1 million limits are available for personal injury coverage and property damage coverage under the CGL policy, and the trial court abused its discretion in concluding otherwise. Therefore, we reverse and remand with instructions to enter summary judgment in FLM's favor on this issue. The amount of coverage over $1.7 million to which FLM may be entitled must be determined in further proceedings.

Reversed and remanded.

BAKER, J., and PYLE, J., concur.